**STATE, Plaintiff, v. KOWAN, Defendant.**

Common Pleas Court, Cuyahoga County.

No. 69234.   Decided October 16, 1958.

124

John T. Corrigan, Pros. Atty., Thomas L. Osborne, Asst. Pros. Atty., Cleveland, for plaintiff.
Hertz & Kates, David Ralph Hertz, Cleveland, for defendant.

## OPINION

By LYBARGER, J.

The defendant, Michael Kowan, was indicted on two counts. The first being that he unlawfully and knowingly had in his possession and under his control certain magazines containing certain obscene, lewd, and lascivious writings, prints, pictures, photographs, drawings and articles. The second count being that he unlawfully and knowingly did exhibit certain magazines containing certain obscene, lewd and lascivious writings, prints, pictures, photographs, drawings, and articles. He is now before the court by way of a demurrer to said indictments.

The demurrer raises the constitutionality of the statutes under which he was indicted, generally on the following grounds, equal protection, due process, the right of free speech and press, the inviolability of private property and the right to possess private property under both our state and federal constitutions. The question before this court, therefore, is in view of the provisions of the constitutions which he cites, has he been properly indicted? The Court has examined all of the questions raised by the defendant and for the reasons set out below finds that he has.

The principal Ohio statutes here involved are §§2905.34, 2905.35, 2905.37 and 3767.01 R. C. Sec. 2905.34 defines the crime and states the penalty; Sec. 2905.35 R. C., permits destruction of the prop-

erty after conviction; §2905.37 **R. C.**, exempts certain publications for various reasons; and §3767.01 **R. C.**, so far as it relates to the questions raised in this case, says that "* * * §§2905.34 and 2905.35 **R. C.**, shall not affect * * * any newspaper, magazine or other publication entered as second class matter by the Post Office Department."

The defendant contends that §2905.37 **R. C.**, exempts druggists in such a way that a druggist would be permitted to sell a publication which a book seller is not even permitted to possess.

This Court feels that admittedly obscene literature is in many respects similar to narcotics, and for the purpose of the demurrer herein the thirty-one publications set out in the indictment admittedly contain certain obscene material. In Roth v. U. S., 354 U. S. 476, 77 S. C. 1304, 1 L. Ed. 2nd 1498, the Supreme Court held that there was no need to prove that obscene material perceptibly created a clear and present danger of antisocial conduct or that it would induce its recipients to such conduct, but that when material is obscene it appeals to the prurient interest. Thus as a narcotic physically poisons the mind and body and is injurious to both moral qualities and physical structures, State v. Martin, 193 L. A. 1036, 192 S. 694, so, too, does admittedly obscene material mentally poison the mind causing, "itching, morbid, lascivious longings of desire, curiosity or propensity for the lewd," Webster's New International Dictionary, 2nd Edition.

"The cry against the circulation of obscenity raised by the law abiding community is a legitimate one; and one with which Congress, the state legislatures, and the courts have been seriously concerned." See U. S. v. Thiry-one Photographs etc., 156 F. Supp. 350.

The Court holds that the classification of druggists in the exception found in §2905.37 **R. C.**, is reasonable as it limits the druggist to the regular course of his business as a druggist and supplier of medical supplies and does not grant to him any special privilege as the seller of periodicals to sell to the public obscene material, see Pulley v. State, 217 S. W. 2nd, 855.

The claim that possession in and of itself can not be wrong is overcome for the same reasons as have been applied above. Society has a right and the necessity of protecting itself from the prurient interests of any individual aroused by obscene literature. Under federal law mere possession can not of itself be made a crime, Pierreeno v. U. S. 271 F. 912, but under state law this is not true, Peachie v. State, 100 A. 2nd 1, and mere possession may be sufficient, State v. Martin, supra, also see People v. Gory, 170 P. 2nd, 433, at page 435, where even knowledge was held unnecessary. Here the indictment states that the defendant knowingly and unlawfully had possession, thus the state must prove knowledge. **Sec. 2905.34 R. C.**, does not aver possession under all circumstances but only when such articles or publications are unlawfully and knowingly possessed or exhibited and these two questions must also be determined, see U. S. v Nicholas, 97 F. 2nd, 510, where the same questions were raised as to mailing obscene literature. The danger to the community as a whole is just as great whether the possessor holds the obscene literature solely for his own purposes as it is when he exhibits or sells it to others.

The statutes are clear and definite as to what the crime is, and lay down a definite standard of criminal liability, U. S. v. Rebhuhn, 109 F. 2nd 512.

The other exceptions as to the exemptions granted in §2905.37 R. C., are likewise held to be invalid, see U. S. v. Thirty-One Photographs, etc., supra.

The entry of a newspaper or periodical publication as second class matter with the Post Office does not give the federal government the right to censor, Esquire, Inc. v. Walker, 151 F. 2nd, 49. That which is obscene is non mailable under any category, Title 18, No. 1461 U. S. Code, U. S. v. Harris, 122 F. 551, U. S. v. Gaylord, 50 F. 410. The U. S. Code at Title 39 Nos. 224 to 235 sets out the manner in which certain newspapers and other periodical publications become second class mail and for a state to interfere with these publications while they are under the exclusive jurisdiction of the federal government would be unthinkable. This Court, therefore, construes the language as found in §3767.01 R. C., set out above, not to be an exception, but rather a means of preserving the validity of the obscenity statutes so that it can not be claimed that the Ohio Legislature was attempting to regulate that which it could not constitutionally regulate.

Since 1909 the constitutional guarantees of freedom of speech, religion, and press have been held to have no relation to any obscene, lewd or lascivious paper or writing, Knowles v. U S., 170 F. 409. In the years following many federal and state courts have passed on this question, and have come to the same conclusion, State v. Becker, 272 S. W. 2nd, 283. This question is no longer debatable in the light of Roth v. U. S. supra, see pages 484 and 485.

The remaining question before the court is whether in the light of the test first evolved by Judge Woolsey in the case of U. S. v. One Book Called "Ulysses," 5 F. Supp. 182, and finally refined and adopted by the Supreme Court in Roth v. U. S., supra, are possible of adaption to this case since the indictment says, "said magazines containing certain obscene, lewd, and lascivious writings, prints, pictures, photographs, drawings, articles" (Emphasis added), and the test as finally evolved for judging obscenity adequate to withstand the charge of constitutional infirmity is "* * * whether, to the average person, applying contemporary community standards, the dominant theme of the material, taken as a whole, appeals to prurient interest" (Emphasis added) Roth v. U. S. supra.

What then is meant by "taken as a whole" and can our statutes and this indictment withstand the charge of constitutional infirmity?

When Judge Woolsey first examined this problem, he was looking at a work of some merit. In his opinion he states that "Ulysses" was a long and often confusing book. Nowhere in the book did the judge detect a leer of the sensualist. The judge found that Joyce was attempting to develop a particular technique and that he followed this technique throughout the entire book. Although he found some dirty words, he found nothing that he considered to be "dirt for dirt's sake" and "each word of the book contributes like a bit of a mosaic to the detail of the picture which Joyce is seeking to construct for his readers."

As Judge Hand reviewed the case of U. S. v. One Book Entitled "Ulysses," 72 F. 2nd, 705, he approved of the test and found that the book taken as a whole, "did not tend to excite sexual impulses or lustful thoughts but that its net effect was only that of some tragic and very powerful commentary on the inner lives of men and women." Thus arose the test that the court should examine the effect of the book as a whole and not merely some passages which could be called obscene.

It was not long before the arguments used to defend "Ulysses" were used to defend other books and in the case of U. S. v. Two Obscene Books, 99 F. Supp. 760, it did not take Judge Goodman very long to determine that the use of confession and avoidance was not proper and that when there were long, filthy descriptions of sexual experiences, practices, and organs, then clearly the book is obscene and any argument that the book as a whole is a literary mosaic is mere sophistry.

It, therefore, became apparent to the courts that neither the number of obscene or objectionable passages nor the portion they bear to the book as a whole were controlling in determining whether the book was obscene and although the test as to a determination of the whole was upheld, the court also looks to the dominant purpose of the publisher in distributing the book, Besig v. U. S., 208 F. 2nd, 142.

What the dominant purpose of a publication is and who is to decide what the dominant purpose is has never really been decided, Esquire, Inc. v. Walker, supra, but it must be realized that most of the cases before our federal courts have involved either books which were written as a whole or magazines which had one thing as their theme, U. S. v. 4200 Copies International Journal, 134 F. Sup. 490.

Thus we find that the magazines whose general theme is to stress a stag party type of treatment or smoking room type of humor have never been tested by the federal courts as to whether or not they are obscene when they embellish their content with an obscene article and/or an obscene picture as an appeal to the prurient interest without changing the dominant purpose or theme of the magazine in its entirety. To permit magazines to print obscenity under the guise of mere vulgarity would be an abuse of the tests first evolved by Judge Woolsey.

This court concurs with Judge Bettman when in **Cincinnati v. Walton, 76 Abs 162,** at **page 169,** he said,

"What I have loosely grouped together as 'mens magazines' are more difficult to classify in terms of what the intent of the authors or publishers may be. Being magazines designed to amuse or delight the reader without educational intent, the line between obscenity and permissible gaiety or pleasure is rather fine.

"The prosecution has contended in its brief that the generally accepted requirement that in judging obscenity a book must be viewed as a whole, does not apply to magazines where stories and pictures are not related to one another. In this the court generally concurs. The "as a whole" test was built up by the courts to escape from the absurd result that was produced when one took, out of contexts, isolated passages from a sincere book. But where the parts are not specifically related

—where, as here, you have a succession of pictures and stories, each conveying an individual message—each can be judged individually. The entire magazine should be examined to cast light on the publisher's intent but an individual picture or story in a magazine not related to the whole can be tested by the principles hereinbefore set out, and can be found obscene."

In adopting the language just set out above, this court is not ignoring nor is it disinclined to reject the arguments set out in **State v. Lerner, 51 Abs 321.** The court feels the opinions are generally compatible. The Court must, in the light of the Roth case reject any idea of applying the "any obscenity" test, but in so doing it need not find the indictment herein improper. The indictment states that certain magazines contained certain obscene material and then sets out the list of some thirty-one publications. What the dominant purpose of these magazines is, is not for this court to decide at this time. This court at a later date with or without the assistance of a jury must decide by the application of the tests set out above whether or not the magazines are obscene.

In holding as it has, the Court is in agreement with Judge Struble in the case of State v. Lerner, supra, and finds that the main part of §2905.34 R. C., and the amendment thereto are severable. The main part of the statute says:

"No person shall knowingly sell, lend, give away, exhibit, or offer to sell, lend, give away, or exhibit, or publish or offer to publish or have in his possession or under his control an obscene, lewd, or lascivious book, magazine, pamphlet, paper, writing, advertisement, circular, print, picture, photograph, motion picture film, * * *"
the amendment continues:

"or book, pamphlet, paper, magazine, not wholly obscene but containing lewd or lascivious articles, advertisements, photographs, or drawings, representation, figure, image, cast, instrument, or article of an indecent or immoral nature, * * *"

In severing the amendment the Court does not invalidate the main portion of the statute. The obscene literature provision with the amendment may not seem to be impartial in its operation, but the amendment is responsible for any existing defect. Standing alone the main part of the statute is impartial in its operation and this inhibition includes all forms of literature. Magazines are, therefore, included in the first portion of the statute and the court need not attempt to follow the "not wholly obscene" test as set out in the second portion.

As to magazines, the Court finds that "taken as a whole" must be construed as it was in the case of Cincinnati v. Walton, supra, and that our Ohio statutes, and this indictment withstand the charge of constitutional infirmity. The demurrer, therefore, is overruled.