City of Youngstown, Appellee, *v.* DeLoreto, Appellant.

270

(No. 4907—Decided September 10, 1969.)

*Mr. Patrick J. Melillo,* director of law, and *Mr. Jack W. Nybell,* for appellee.
*Mr. Dennis Haines,* for appellant.

LYNCH, P. J. Defendant, appellant herein, is appealing his conviction in a trial before Judge Joseph Donofrio of the Youngstown Municipal Court for violation of Youngstown City Ordinance 132.09 (a) entitled "Indecent Literature," in which he was fined $200 and costs. Defendant challenges the constitutionality of this ordinance.

YOUNGSTOWN CITY ORDINANCE ON INDECENT LITERATURE.

Youngstown City Ordinance 132.09 (a) provides as follows:

"Whoever publishes, distributes, circulates, sells, lends, gives away, exhibits, or has in his possession or under his control with intent to publish, distribute, circulate, sell, lend, give away or exhibit any book, magazine, article, advertisement, print, or written or printed matter of any kind or form which, as a whole or in part, is obscene, indecent, lewd or lascivious, shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than two hundred dollars or imprisoned not more than thirty days, or both."

The affidavit in this case charged defendant with violation of city Ordinance 132.09 (a) in that he "did have in his possession or under his control with intent to distribute, sell or exhibit magazines which, as a whole or in part, is obscene, indecent or lascivious."

Prior to the trial, defendant timely filed a motion to dismiss the affidavit on the ground that Youngstown City Ordinance 132.09 (a) is unconstitutional. The trial judge overruled this motion prior to the trial of the case.

GUILTY KNOWLEDGE AND PURPOSE.

Defendant has renewed his contention before this court that Youngstown City Ordinance 132.09 (a) is unconstitutional, because it lacks the criminal element of knowledge.

Both the United States Supreme Court and the Ohio Supreme Court have held that ordinances or statutes which prohibit the possession or sale of obscene materials without reference to guilty knowledge (*scienter*) or guilty purpose (*mens rea*) on the part of the accused are unconstitutional. *Smith* v. *California*, 361 U. S. 147; *State* v. *Griffith*, 174 Ohio St. 553; *State* v. *Warth*, 173 Ohio St. 15; *State* v.

*Jacobellis,* 173 Ohio St. 22; and *Cincinnati* v. *Marshall,* 172 Ohio St. 280.

Counsel for the city of Youngstown point out that there are many statutory crimes in Ohio in which knowledge or intent is a necessary element of the crime but the applicable statutes do not make any specific reference to knowledge or intent, such as Sections 2901.12 (robbery) and 2901.13 (armed robbery) of the Revised Code.

We hold that when a criminal ordinance or statute does not clearly make guilty knowledge and guilty purpose elements of the offense, but judicial interpretation has made such knowledge and purpose necessary elements, an affidavit charging the offense solely in the language of the ordinance or statute is insufficient.

The Ohio Supreme Court had this issue before it on indictments filed under Section 2905.34, Revised Code, and has held that, where a criminal statute does not clearly make a certain specific intent an element of the offense, but judicial interpretation has made such intent a necessary element, an indictment charging the offense solely in the language of the statute is insufficient. *State* v. *Ross,* 12 Ohio St. 2d 37; *State* v. *Potts,* 16 Ohio St. 2d 111.

We have had the issue of the omission of a material element of a crime in an affidavit before this court, and we held that such omission is fatal to the validity of such affidavit. *State* v. *Goodman,* 8 Ohio App. 2d 166.

We hold that the affidavit in this case did not contain the material elements of guilty knowledge and guilty purpose, that the affidavit is insufficient, and that the trial judge committed error in overruling the motion to dismiss the affidavit.

Our decision on this point would ordinarily dispose of this case, but this case is one of several similar cases arising out of complaints by a member of the Youngstown City Council to the Youngstown Police Department. Counsel for both the defendant and the city of Youngstown have requested that we determine all the issues in this case to provide guide lines for future actions in this area. We recognize the legal problems created by the present con-

troversy and confusion in this area of law, and we feel that it is our duty to make a judicial determination of as many of the issues as we can under the present circumstances.

## Magazines at Issue.

Two of the magazines at issue in this case are entitled "Venus" and "Angel" and are blatant pornography. The purpose of these publications is obvious, because the cover of each magazine has large pictures of nude females in seductive poses with the focus of the camera on the exposed genital areas of the models.

Neither "Venus" nor "Angel" has any written articles. They consist of photographs of nude or almost nude women. In practically all the pictures, the breasts and pubic area are fully exposed. In many of the pictures long stockings and garter belts are employed to frame the pubic area and to focus attention upon it. The models are posed in various positions, such as reclining, sitting or standing, but the general theme is seductive poses with the knees and legs of the models sufficiently widespread to reveal their genital areas in their entirety. In both magazines there are close-up front views of the exposed genital area of the models taken at an angle so as to focus on their sex organs.

The third magazine at issue is "Avant Nude" which according to its stated purpose is intended for nudists and those persons interested in the nudist scene. It's cover has a picture of a nude female, but the title of the magazine is superimposed on her genital area so that her sex organ is covered. It has written articles on nudism, and has pictures of both nude men and women, both separately and together.

In fulfillment of the stated purpose of this magazine, pictures are taken of what are claimed to be normal activities of nudists, and we feel that many pictures sufficiently qualify in this category so as to be beyond dispute. However, the first picture opposite the cover of "Avant Nude" as well as several other pictures in this magazine are, in our opinion, pornography, because they are posed pictures with the knees and legs of the models widespread so as to

fully expose the genital area of the models, and the pictures are close-up front views of the genital area of the models taken at an angle so as to focus on their sex organs.

Both "Venus" and "Avant Nude" have "For Adults Only" printed in relatively small print on their front covers, but "Angel" has no such warning anywhere.

These three magazines were obtained from Southway News, which is located at 2112 South Avenue, Youngstown, Ohio. It is described as a small convenience store which engages primarily in the sale of grocery items and the sale of beer and wine to carry out. It also sells books and magazines from racks in the store. The evidence indicates that the racks extended from the entrance of the store to the whole length of the remainder of the store to the right but does not establish the entire length of such racks or the location of such racks with reference to the other items sold in the store, such as groceries.

The evidence is that these magazines were found in a section of the magazine- or book- racks where this "particular type of literature" is located in this store. The evidence indicates also that the section of the magazine- or book- racks where this type of publication was located was not separated in any way from the rest of the store, and there was no sign placed over this particular section to the effect that the reading of such magazines was restricted to adults only.

PORNOGRAPHY DEFINED.

There is no statutory definition of pornography in Ohio, and in order to eliminate any question of what we mean we will define it as follows:

Pornography is the portrayal of erotic behavior designed to cause sexual excitement. *State* v. *Graves* (Maine), 224 A. 2d 57, at page 60; Webster's Third New International Dictionary. It is words, acts, or representations that are calculated to stimulate sex feeling independent of the presence of another loved and chosen human being. It is divorced from reality in its sole purpose to stimulate erotic response. It is preoccupied with and concentrates on sex organs for the purpose of sexual stimulation. It emphasizes them and focuses on them in varying ways

calculated to incite sexual desire. Lockhart and McClure, Censorship of Obscenity, 45 Minnesota Law Review 5, at pages 62-65. Dr. Natalie Shainess in a book review of "Erotic Art" in July, 1969, issue of Psychology Today, page 10. See *Cincinnati* v. *Walton*, 76 Ohio Law Abs. 162.

Dr. Shainess distinguishes between art and pornography as follows: True art conveys a thought, a speculation, or a perception about the human condition. Pornography is pictures of sex organs and their usage devoid of all other meaning—the personality having no place. They bear in upon one a sense of increasing ugliness and degradation of the human being. Pornography is not art, no matter how pretty the colors.

SEARCH AND SEIZURE.

Defendant contends that the magazines at issue were illegally obtained because they were seized without warrant and without a prior judicial determination of obscenity, and that such magazines should not have been admitted into evidence.

In the instant case, the police officers entered the store during business hours the same as any other member of the general public; identified themselves to the defendant who was in charge of the store; selected only one copy of each publication alleged to be obscene; did not arrest defendant, but informed him that they were going to bring the magazines to their office for review and that if a decision was made to prosecute the magazines would be used as evidence; and offered to pay for the three magazines. Defendant voluntarily permitted the police officers to take the magazines without paying for them. We hold that this was neither an unlawful search nor an unlawful seizure by the police officers. Defendant had the option to demand payment for these magazines from the police officers on the same basis as any other member of the public and was free to sell other copies of these magazines if he wished to assume the risk to do so. The existence of the obscenity laws of the state of Ohio and the city of Youngstown would induce some tendency to self-censorship on the part of defendant. We hold that the fact that the police officers' actions in this case may increase this tendency to self-

censorship on the part of defendant does not constitute unlawful prior restraint.

*Marcus* v. *Search Warrant*, 367 U. S. 717, and *A Quantity Of Copies of Books* v. *Kansas*, 378 U. S. 205, concern the seizure of the entire stock of allegedly obscene publications without the consent of the owner for the purpose of confiscating such material.

*Lee Art Theatre* v. *Virginia*, 392 U. S. 636, and *Metzger* v. *Pearcy, Pros. Atty.*, 393 F. 2d 202, concern the seizure of the only reel, or reels, of allegedly obscene motion pictures without the consent of the owner for the purpose of evidence. Apparently the seizure had the effect of preventing the showing of such motion pictures prior to any judicial determination of whether such motion pictures were obscene, because the motion picture reels were out of possession of the owner.

CONSTITUTIONALITY OF OHIO LAWS PROHIBITING OBSCENE PUBLICATIONS.

Defendant further contends that the three magazines at issue in this case are constitutionally protected. This raises the crucial issue in this case, namely, whether the city of Youngstown, or state of Ohio, can regulate the type of pictorial pornographic publications which are at issue in this case.

A statute prohibiting obscene, lewd and lascivious publications has been part of Ohio law since 1872 (69 Ohio Laws 174), and is now Section 2905.34, Revised Code. Similar statutes apparently have been in general use throughout the United States.

Since 1902, all municipal corporations in Ohio have statutory authority to prohibit the distribution, sale and exposure for sale of obscene or immoral books, papers, pictures and periodicals or advertising matters. Section 715.54, Revised Code, 96 Ohio Laws 25.

However, there is no statutory definition in Ohio of either of the words "obscene," "indecent" or "lascivious." Under Section 2905.26 (B) of the Revised Code "lewdness" as used in certain statutes is defined as including "any indecent or obscene act."

We feel that the words "indecent, lewd or lascivious" have no significant meaning beyond the meaning of "obscene" for the purpose of this case; therefore, we will drop any further discussion of these words and discuss the word "obscene."

Practically all the cases on this subject, that have come to our attention, concern the use of the word "obscene" as a legislative standard without any meaningful definition of such word.

In *Roth* v. *United States*, 354 U. S. 476, the United States Supreme Court held that obscenity is not within the area of constitutionally protected freedom of speech or press. The court held further that the claim that obscenity statutes are unconstitutionally vague is without merit, for the reason that when the proper standards for judging obscenity are applied there are boundaries sufficiently distinct for judges and juries fairly to administer the law, and adequate warning of the conduct proscribed is given. The *Roth case* has never been overruled and is still the law today.

In *Memoirs* v. *Massachusetts*, 383 U. S. 413, the court held that:

"Under the test in *Roth* v. *United States*, 354 U. S. 476, as elaborated in subsequent cases, each of three elements must independently be satisfied before a book can be held obscene: (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

Section 2905.34, Revised Code, is comparable to Youngstown City Ordinance 132.09 (a) in prohibiting "obscene, lewd, or lascivious" publications, and has been upheld as a valid exercise of the police power of the state of Ohio. *State* v. *Jacobellis*, 173 Ohio St. 22: *State* v. *Wetzel*, 173 Ohio St. 16. See, also, *State* v. *Mazes*, 7 Ohio St. 2d 136, which held that the book "Orgy Club" was obscene.

In *New American Library of World Literature, Inc.*,

v. *Allen*, 67 Ohio Law Abs. 143, an earlier Youngstown City Ordinance that used that standard of "obscene" and "immoral" was held not to be unconstitutionally vague.

Therefore, under the present state of the law, we hold that Youngstown City Ordinance 132.09 (a) and Section 2905.34, Revised Code, are not unconstitutionally vague in the use of the standard of "obscene, indecent, lewd or lascivious."

APPLICATION OF OHIO LAW TO PICTORIAL PORNOGRAPHY.

We agree with Judge Donofrio that all these magazines are obscene from the viewpoint of an Ohio Court applying the standards set out by the United States Supreme Court in the *Roth-Memoirs cases.*

In arriving at this conclusion we have restricted the meaning of obscene to offensive to the moral standards of the people as a whole. After a review of the law on this subject, we have concluded that, in order for a statute or ordinance prohibiting obscene publications to be constitutionally valid, the moral standards of the people as a whole constitute the only test allowable.

Judge Struble of the Hamilton County Common Pleas Court enunciated this test in *State* v. *Lerner*, 51 Ohio Law Abs. 321, at page 332.

We agree with his reasoning that Ohio's "obscene" statute was enacted for the preservation of the morals of the people of this state, and that the moral standards or moral concepts of the people, as to what is obscene literature, is the only test allowable.

In our opinion, the question of who determines the applicable standard in obscenity cases, whether it is the moral standards of any particular community or any other standard, is extremely important, because the determination of this question also, in effect, determines what acts of publication on sexual matters constitute a crime and what do not. We feel that this is a legislative rather than a judicial function.

The power to determine which acts shall constitute crimes, and which acts shall not, belongs exclusively to the legislative branch of government and is not shared by the

courts. *State* v. *Healy,* 156 Ohio St. 229; *State* v. *O'Mara,* 105 Ohio St. 94; 15 Ohio Jurisprudence 2d 249, Criminal Law, Section 13; 21 American Jurisprudence 2d 95, Criminal Law, Section 14.

We hold that the determination of community standards relating to the description or representation of sexual matters is a legislative rather than a judicial function.

The moral standards of the people in Ohio on sex are readily ascertainable because of the statutes that have been enacted on the subject. Youngstown has similar ordinances to the statutes of the state of Ohio.

OHIO LAWS INDICATING SEX MORAL STANDARDS.

Laws of Ohio and the city of Youngstown relating to sex, which indicate the moral standards of the people of Ohio, prohibit the following:

1. Adultery or fornication. Section 2905.08, Revised Code. Youngstown City Ordinance 132.03.

2. Prostitution. Sections 2905.14 and 2905.27, Revised Code. Youngstown City Ordinance Sections 132.01, 132.04 and 132.06.

3. Any person eighteen years of age or over willfully making an indecent exposure of his person in a public place or in a place where there are other persons to be offended or annoyed thereby, or solicit another to engage in an act of sex perversion. Section 2905.30, Revised Code. Youngstown City Ordinance 132.11.

4. Any person eighteen years of age or over willfully exposing his or her private parts in the presence of two or more persons of the opposite sex. "Private Parts" means the external genitalia of the human body. Section 2905.31, Revised Code.

5. Sodomy. Section 2905.44, Revised Code.

MORAL STANDARDS OF OHIO PEOPLE ON SEX.

Thus, the laws of Ohio and the city of Youngstown prohibit extra-marital sexual relations, as offensive to the moral standards of the people of Ohio. Nudity to the extent of exposing the external genitalia of a male or female human body is also prohibited as likely to incite or encourage extra-marital sexual relations.

We hold that one of the purposes of Section 2905.34, Revised Code, and of Youngstown City Ordinance Section 132.09 (a), is directed at obscene publications that are likely to incite or encourage sexual conduct contrary to the moral standards of the people of Ohio.

We further hold that photographs of male or female human bodies exposing their external genitalia in a manner designed to cause sexual stimulation or excitement are contrary to the moral standards of the people of Ohio.

In our opinion, there is a reasonable relationship between such photographs and the public policy of Ohio, which prohibits obscene publications that are likely to incite or encourage extra-marital sexual relations contrary to the moral standards of the people of Ohio. We understand that magazines of this nature are being found in school lockers of boys attending high schools. We feel that when it is a matter of incurring expense to purchase such publications, these photographs would generally have more appeal to unmarried males or to married men in unstable marriages.

Our conclusion is that pictorial pornography as we have defined it in this opinion is included among the obscene publications prohibited by Section 2905.34, Revised Code and by Youngstown City Ordinance 132.09 (a). We are inclined to think that pictorial pornography would cover most, if not all, pictorial obscenity prohibited under these laws, but it is unnecessary for us to decide this issue in this case.

We hold that the cover pictures of both "Angel" and "Venus" and the photographs in all three magazines, which are close-up front views of the fully exposed genital area of the models and in which the focus is on the sex organ of the models, are pornography, are offensive to the moral standards of the people of Ohio and of Youngstown, and are obscene publications within the meaning of both Youngstown City Ordinance 132.09 (a) and Section 2905.34, Revised Code.

### NUDITY.

Defendant points out that nudity is not per se obscenity. The rationale of this statement is that the por-

trayal of humankind as God made them is not obscene, because there cannot be any obscenity in God's own handiwork. *State* v. *Lerner*, 51 Ohio Law Abs. 321, at pages 338-340.

Sex is part of the creation of human beings and enables a wonderful and beautiful relationship when a man and woman unite in marriage. Sex is not per se obscene, but the use of the human body for sexual behavior not intended in the creation of human beings can make such behavior obscene.

In the creation of human beings, the male is more aroused by the sight of the female sex organ than the female is by the sight of the male sex organ. Thus, most pornographic publications are designed to appeal to males, because of this difference in sexual interests between males and females.

In the creation of a female, the location of the sex organ is such that it is not fully revealed unless she spreads her legs. Because of this a nude woman does not normally completely expose her sex organ in usual activities. Thus, the complete exposure of the sex organ of a nude woman is usually the result of her deliberate decision to do so.

The great majority of women in civilized societies observe a sense of decency and cover their sex organs. However, a small minority of women in civilized societies defy this generally accepted standard of human sexual behavior and degrade themselves by publicly exhibiting their sex organs by assuming poses that are unusual or unnatural for any other purpose except to expose their sex organs. The sexual behavior portrayed in such pictorial pornography is not the usual behavior of a married woman in the presence of her husband in their private bedroom.

We hold that photographs of nude females posed in unusual and unnatural positions for the purpose of exposing their genital area, and focusing the camera on their sex organs, degrades the purpose of God's creation and is such an abuse of His handiwork as to make such behavior obscene. Such photographs are designed to cause sexual stimulation or excitement. It is a morbid appeal

to a male's prurient interest in sex and is offensive to the moral standards of the people of Ohio. Such photographs make sex ugly and degrade and insult human nudity.

### FEDERAL REVIEW OF OHIO CASES.

Ohio courts which have attempted to apply the *Roth-Memoirs* test to Ohio cases have been overruled several times in recent years by the United States Supreme Court. At times, Ohio courts have been summarily overruled with a one sentence comment.

*State* v. *Jacobellis*, 173 Ohio St. 22, was reversed in *Jacobellis* v. *Ohio*, 378 U. S. 184, on the basis that the film at issue, entitled "Les Amants" ("The Lovers"), was not obscene. *State* v. *Mazes*, 7 Ohio St. 2d 136, was reversed in *Mazes* v. *Ohio*, 388 U. S. 453, and *State* v. *I. & M. Amusements, Inc.*, 10 Ohio App. 2d 153, was reversed in *I. & M. Amusement Corp.* v. *Ohio.* 389 U. S. 573, on authority of *Redrup* v. *New York*, 386 U. S. 767, without further comment.

The Ohio Supreme Court in *State* v. *Jacobellis, supra,* followed the test prescribed by the United States Supreme Court in the *Roth case*, and in *State* v. *Mazes, supra,* followed the test prescribed by the United States Supreme Court in the *Memoirs case.*

*Jacobellis* v. *Ohio, supra.* was a six-to-three decision with only three judges concurring in the main opinion, which held in effect that the fact of whether a particular publication is obscene is a matter of judicial determination (378 U. S. 187-188). and that the contemporary community standards by which the issue of obscenity is to be determined are not those of the particular local community from which the case arises, but those of the nation as a whole.

### FEDERAL STANDARDS ON OBSCENITY.

Thus, the United States Supreme Court recognizes that obscenity is not constitutionally protected and can be regulated: however, the United States Supreme Court has, in effect, taken the position that they are the final authority on what is obscene. After examination of their recent decisions, we come to the conclusion that in the eyes of the members of the United States Supreme Court the

area of obscenity subject to constitutional restriction is now limited.

In *State* v. *J. L. Marshall News Co.*, 13 Ohio Misc. 60, Judge Bettman of the Hamilton County Common Pleas Court held that, pursuant to *Redrup* v. *New York*, 386 U. S. 767, a prosecution for alleged possession of obscene materials under Section 2905.34, Revised Code, may not be prosecuted to a judgment of conviction without violation of the rights of freedom of speech and the press, unless based upon evidence that the materials possessed were hard core pornography, that the defendant was pandering, or that the publication was so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it.

Mr. Justice Harlan, in his dissenting opinion in *Interstate Circuit, Inc.*, v. *Dallas*, 390 U. S. 676, at pages 704 to 707, points out that anyone who undertakes to examine the Supreme Court's decisions since *Roth* v. *United States*, 354 U. S. 476, which have held particular material obscene or not obscene would find himself in utter bewilderment. Two members of the court maintain that the First and Fourteenth Amendments render society powerless to protect itself against the dissemination of even the filthiest materials. The remaining members believe that "obscenity" is not beyond the pale of governmental control but are sharply divided as to the proper application of the standards in *Roth, supra*; *Memoirs* v. *Massachusetts*, 383 U. S. 413, and *Ginzburg* v. *United States*, 383 U. S. 463. Most of the latter group seemingly consider that the *Roth-Memoirs-Ginzburg* tests permit suppression of material that falls short of so-called "hard core pornography" on equal terms as between federal and state authority. Another view is that only "hard core pornography" may be suppressed, whether by federal or state authority. Mr. Justice Harlan has another view which is that the federal government may only suppress "hard core pornography," whereas under the Fourteenth Amendment states are permitted wider authority to deal with obnoxious matter than might be justifiable under a strict application of the *Roth-Memoirs-Ginzburg* rules.

Mr. Justice Harlan believes that no improvement in this chaotic state of affairs is likely to come until it is recognized that this whole problem is primarily one of state concern, and that the Constitution tolerates much wider authority and discretion in the states to control the dissemination of obscene materials than it does in the federal government.

We feel that Mr. Justice Harlan has succinctly stated our problem in deciding this case. It is to be noted that Mr. Justice Harlan makes a distinction between cases concerning federal laws and those concerning state laws.

Mr. Justice Stewart of the United States Supreme Court, in dissenting opinions, has stated that hard core pornography is the only class of material that government may constitutionally suppress; whether by criminal or civil sanctions. He set out the following description of the kind of materials which he considered hard core pornography in *Ginzburg* v. *United States,* 383 U. S. 463, at page 499:

"* * * Such materials include photographs, both still and motion picture, with no pretense of artistic value, graphically depicting acts of sexual intercourse, including various acts of sodomy and sadism, and sometimes involving several participants in scenes of orgy-like character. They also include strips of drawings in comic-book format grossly depicting similar activities in an exaggerated fashion. There are, in addition, pamphlets and booklets, sometimes with photographic illustrations, verbally describing such activities in a bizarre manner with no attempt whatsoever to afford portrayals of character or situation and with no pretense to literary value. * * *"

In our opinion, the three magazines at issue in this case are not hard core pornography within the meaning of the above definition of Mr. Justice Stewart.

However, we are inclined to feel that the standard of the United States Supreme Court is something that falls short of hard core pornography as used by Mr. Justice Harlan in his dissenting opinion in *Interstate Circuit, Inc., supra*. See *Mishkin* v. *New York,* 383 U. S. 502.

We feel that the standard "something that falls short of hard core pornography" is almost as imprecise as the use of the word "obscene." Until the United States Supreme Court gives a definition of this expression, a court, such as this one, is not in a position to apply it.

Is Pictorial Pornography Constitutionally Protected?

The publishers of pornography, in support of their position that it is constitutionally impermissible for governmental regulation of the pornographic magazines which are at issue, cite cases of the United States Supreme Court as authority to support their position. Unquestionably, some minority members of the United States Supreme Court are squarely on the side of the publishers of pornography on their right to publicly sell and exhibit pornography to adults regardless of whether this is offensive to the sex morals of the great majority of the community. However, we are only bound by the decisions of the majority of the court.

The main case upon which defendant relies is *Central Magazine Sales, Ltd.*, v. *United States*, 389 U. S. 50, which reversed decisions in 373 F. 2d 633, and *United States* v. *392 Copies*, 253 F. Supp. 485, on authority of *Redrup* v. *New York*, 386 U. S. 767. The lower courts' decisions had held that a magazine entitled "Exclusive" was obscene under the provisions of Section 1305, Title 19, U. S. Code, prohibiting the importing of obscene publications. From the description of "Exclusive" in the two lower court decisions, we cannot distinguish "Exclusive" from the three magazines at issue in this case. Therefore, if the decision of the *Central Magazine Sales case* is controlling in this case, we must follow it. However, the application of the *Central Magazine Sales case* to the facts of the instant case leads to disturbing results that are not consistent with other United States Supreme Court decisions.

Defendant's conduct in his blatant display of pictorial pornography in his store indicates that he believes the contention of the publishers of pornography, that this material is constitutionally protected from governmental regulation.

The front covers of two of the magazines at issue are blatant pictorial pornography, that were openly displayed on a magazine rack in his small grocery store, with no provision to isolate them from any member of the public, who happens to enter the store to purchase such items as groceries, nonobscene magazines, newspapers, etc., and with no warning as to the fact that this pornography is present in the store. As we have already held, the covers of these magazines are offensive to the moral standards of the people of Ohio and would be offensive to a substantial percentage of the general public. Under the facts of this case, patrons of this store for purposes other than the purchase of this pornography are confronted with it without any warning and regardless of whether it is offensive to them.

If we should sustain defendant's contention that pictorial pornography is constitutionally protected from governmental regulation, one of the results of such decision would be to give defendant the right to place a large poster in the window of his store advertising the sale of such magazines as "Venus" and "Angel" with a blown-up picture of their pornographic covers. His store is located on a main, well-travelled street in Youngstown; and if this were done, such a poster would be seen by many persons of all ages. We recognize that this is not the issue in the instant case, but, in our opinion, the difference between the exposure of such a pornographic poster to the general public and the exposure of the magazines with pornographic front covers on a magazine rack, in a small grocery store, located in a narrow aisle opposite grocery shelves, with no provision to isolate such material or to warn about its presence, is a matter of degree rather than substance. In both cases, the pictorial pornography is being intruded upon unwilling persons.

The facts of this case should be distinguished from situations where pictures alleged to be obscene are being displayed to persons willing to view them, such as erotic motion pictures shown at "Art" theatres for adults only. Those who are offended by such motion pictures are on

notice of what to expect and have the choice to remain away from such pictures. In the instant case there is no notice to anybody of the existence of this pictorial pornography so that patrons unwilling to see this pornography will have the opportunity to avoid seeing it.

In the recent case of *Stanley* v. *Georgia*, 394 U. S. 557, 37 U. S. Law Week 4315, the court held that there is a fundamental right to be free, except in very limited circumstances, from unwanted governmental intrusions into one's privacy; that whatever the power of the state to control public dissemination of ideas inimical to the public morality it cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts; and that the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime. The court distinguished the *Stanley* case from *Roth* v. *United States*, 354 U. S. 476, and similar cases which deal with public distribution of obscene materials, because such distribution is subject to different objections. For example, there is always the danger that obscene material might fall into the hands of children, or that it might intrude upon the sensibilities or privacy of the general public.

The United States Supreme Court has made it clear that pictorial pornography is not constitutionally protected from governmental regulation when juveniles are concerned. In *Ginsberg* v. *New York*, 390 U. S. 629, a conviction for selling "girlie" magazines to a minor under seventeen contrary to New York Penal Law Section 484-h was upheld. In our opinion, the New York statute is particularly well drafted, and we recommend it as a model for Legislatures which wish to enact similar legislation. The entire statute appears on pages 645 to 647 in the opinion. This statute has been repealed, and is now Sections 235.20 through 235.22 of the New York Penal Law.

In the instant case, defendant was not charged with exhibiting this pornography to minors, and there was no evidence that juveniles were exposed to it. Therefore, this cannot be considered on the issue of the possible guilt of

288

the defendant of a crime under the facts of this case. However, on the issue of whether pictorial pornography is constitutionally protected, we have to consider that the facts in this case indicate that this is the type of store that juveniles would have occasion to patronize. If this is so, this would be sufficient reason in itself to overrule defendant's contention that the magazines at issue are constitutionally protected. The right of parents to send their minor children to a grocery store for such items as bread or milk without having their children exposed to pictorial obscenity is of such public concern as to justify the protection of such right by governmental regulation of pictorial obscenity.

The United States Supreme Court has also recognized the right of individuals who are offended by pictorial obscenity to be protected from having such obscenity intruded upon them without their consent. *Stanley* v. *Georgia,* 394 U. S. 557; *Redrup* v. *New York,* 386 U. S. 767, at 769.

The constitutional rights of each individual are subject to reasonable limitations in relation to the rights of others. *Public Utilities Commission* v. *Pollak,* 343 U. S. 451.

In *Breard* v. *Alexandria,* 341 U. S. 622, the court stated at page 642:

"The First and Fourteenth Amendments have never been treated as absolutes. Freedom of speech or press does not mean that one can talk or distribute where, when and how one chooses. Rights other than those of the advocates are involved. By adjustment of rights, we can have both full liberty of expression and an orderly life."

We distinguish the *Central Magazine Sales case* from the instant case by the fact that the *Central Magazine Sales case* concerned enforcing a federal law which would have the effect of prohibiting the pornographic magazines for all purposes. The United States Supreme Court has held in the *Stanley case* that it is unconstitutional to make mere private possession of obscene material a crime; therefore, federal laws prohibiting the importing of obscene publications can not be used to prohibit magazines that can constitutionally be possessed for private use.

We understand that all fifty states have laws regulating obscene publications, but among the states having such laws there is a difference in the interpretation of what acts of publications are obscene.

The decisions of the United States Supreme Court indicate that their standards for obscenity are variable rather than inflexible, and the application of such standards will vary according to the nature of the materials and the use or purpose of obscene publications. *Ginzburg* v. *United States*, 383 U. S. 463.

The Supreme Court of Missouri held that similar pictorial pornography was not constitutionally protected and was obscene in *State* v. *Vollmar*, 389 S. W. 2d 20.

We conclude that the sale of pictorial pornography, under the facts of this case, is not constitutionally protected and is, therefore, subject to governmental regulation.

### MEANINGFUL LEGISLATIVE DEFINITION OF PICTORIAL PORNOGRAPHY.

It should be noted that in *Jacobellis* v. *Ohio*, 378 U. S. 184, as in practically all other cases that have come before the United State Supreme Court on the issue of obscenity concerning adults, there was no meaningful legislative definition of "obscene." Because of the indefiniteness of such legislation, the United States Supreme Court properly held that when there is no meaningful legislative definition of "obscene" it is a matter of judicial determination whether a particular publication is obscene. Thus, the result of a Legislature's failure to define "obscene" is to delegate the responsibility of determining what acts of publication on sex are obscene to the courts and ultimately to the United States Supreme Court.

We are unaware of any cases coming before the United States Supreme Court concerning pictorial pornography for adults in which the Legislature sufficiently described the pictorial pornography so that it was unnecessary for the judicial determination of what type of photographs or pictures concerning sex were being prohibited for adults.

Mr. Justice Clark in the majority opinion in *Times Film Corp.* v. *Chicago*, 365 U. S. 43, at 46, pointed out that

there are different constitutional considerations between statutes that are "clearly drawn" and those that are so "vague" or "indefinite" as to provide no clear standard.

We feel that in contrast to written material, legislation can be drafted dealing with pictures so that it would be unnecessary for a judicial determination of what is prohibited. We are not advocating the enactment of such legislation, because we do not think that is a proper function of this court. However, on the issue of whether the legislative bodies of the city of Youngstown and the state of Ohio can constitutionally regulate pictorial pornography, we wish to point out that as far as we know the issue of the right of the Legislature as a matter of public policy to prohibit the commercial sale of pictorial pornography described in such specific language that it is unnecessary for a judicial determination as to what is prohibited has not come before the United States Supreme Court.

The right of a Legislature to prohibit pornography as a matter of public policy has been recognized by such eminent authorities as William B. Lockhart and Robert C. McClure, 38 Minnesota Law Review 295, at 388.

Pictorial pornography is more a representation of sexual conduct than an expression of an idea on such conduct. It has been recognized that the visual impact of a photograph is greater than written or spoken words, and that pictures of sexual scenes can not be shown with as much frankness as they may be described in books. Lockhart and McClure, Censorship of Obscenity, 45 Minnesota Law Review 5, at pages 94, 101-102.

For whatever it is worth, the members of this court believe that, as a matter of public policy, the state of Ohio or the city of Youngstown should have the authority to regulate the type of pornographic publications that are now flooding the city of Youngstown. In taking this position, we are aware that some minority members of the United States Supreme Court disagree with such right of the legislative bodies.

We recognize that the issue of sex morals is contro-

versial, but so are the issues of gambling, drinking intoxicating liquor or even smoking marijuana, but no court has disputed the right of a state or community to prohibit these matters when they are offensive to the community morals or standards.

It has been generally recognized that the right of an individual to publicly engage in activity that would otherwise be permitted, but is prohibited by law because it is offensive to the community morals, must yield to rights of the majority to prohibit what is offensive to reasonable community moral standards. It is true that the First Amendment is argued in obscenity cases, but it is also true that the United States Supreme Court has held that obscenity is not within the area of constitutionally protected freedom of speech or press.

On the reasonableness of legislation regulating pornography, Mr. Justice Clark, in his dissenting opinion in *Memoirs* v. *Massachusetts,* 383 U. S. 413, at pages 452-453, points out that there are medical experts who believe that erotic stimulation caused by pornography frequently manifests itself in criminal sexual behavior or other antisocial conduct, citing Wertham, Seduction of the Innocent (1954) 164. Dr. George W. Henry of Cornell University has expressed the opinion before the Subcommittee of the Judiciary Committee to Investigate Juvenile Delinquency in 1956, that obscenity, with its exaggerated and morbid emphasis on sex, particularly abnormal and perverted practices, and its unrealistic presentation of sexual behavior and attitudes, may induce antisocial conduct by the average person.

In addition, there is persuasive evidence from criminologists and police officials. J. Edgar Hoover, Director of the Federal Bureau of Investigation, has repeatedly emphasized that pornography is associated with an overwhelmingly large number of sex crimes. Hoover, Combating Merchants of Filth: The Role of the FBI, 25 U. Pitt. L. Rev. 469 (1964); 27 Cincinnati Law Review 61, at 75.

The clergy are also outspoken in their belief that pornography encourages violence, degeneracy and sexual mis-

conduct. After years of service with the West London Mission, Rev. Donald Soper found that pornography was a primary cause of prostitution. Rolph, Does Pornography Matter? (1961) 47-48. For a general discussion see Murphy, Censorship: Government and Obscenity (1963) 131-151.

In drafting legislation in this area, material dealing with sex in a manner that has medical, scientific, educational or artistic value should be excluded from regulation.

*Judgment reversed.*

O'NEILL and JOHNSON, JJ., concur.