**Thomas HAWKINS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 16744.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 21, 1962.

Decided Nov. 1, 1962.

**850**

Mr. Francis J. Kelly, Washington, D. C. (appointed by this court), for appellant.

Mr. Paul A. Renne, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Nathan J. Paulson, Asst. U. S. Atty. at the time of argument, were on the brief, for appellee.

Before BAZELON, Chief Judge, and WILBUR K. MILLER and WRIGHT, Circuit Judges.

WRIGHT, Circuit Judge.

Appellant was convicted of Assault With Intent to Commit Robbery [1] and Robbery.[2] On appeal he alleges two errors in the trial court below: (1) denial of his motion for judgment of acquittal by reason of insanity; (2) intemperate examination by the trial judge of a Government psychiatrist subpoenaed by the defense. We affirm the conviction.

On his own motion appellant was ordered to D. C. General Hospital for mental examination to determine his competency to stand trial.[3] Dr. Rockland, Assistant Chief Psychiatrist of that hospital, signed its report indicating that appellant was competent to stand trial. With respect to appellant's mental condition at the time of the alleged crime, the hospital report stated:

> " * * * However, he is suffering from a 'low grade' mental illness, a Schizoid Character Disorder. This predisposes him to becoming psychotic, particularly under the influence of large amounts of alcohol. During these psychotic episodes, he would not be responsible for his actions.

> "It is very possible, and even probable, that the crime was committed while Mr. Hawkins was temporarily psychotic; however, we cannot, in retrospect, be sure of this."

Dr. Rockland's testimony on trial, which confirmed the hospital report, and the testimony of appellant's mother, who said that as a child her son had fallen on his head twice, was the only evidence offered by the defense on the mental issue. The Government offered none. The police officers who arrested Hawkins within thirty minutes after the robbery, however, testified unequivocally that he was "completely sober" at that time.

The defense maintains that the mental condition of the defendant became an issue in the case when it introduced *some* evidence tending to show incompetence at the time of the act, and that the Government, having offered no evidence on this issue, has failed even to undertake its burden of proving Hawkins sane at the time of the offense beyond a reasonable doubt. The Government, while not conceding that the evidence introduced was sufficient to raise the issue, maintains nevertheless that the jury was justified in finding Hawkins sane be-

---

1. D.C.Code § 22–501.

2. D.C.Code § 22–2901.

3. D.C.Code § 24–301(a).

yond a reasonable doubt on appellant's evidence alone. The Government also argues that Dr. Rockland did not classify Hawkins' mental condition as a disease and that, in any event, according to the psychiatric evidence, the condition, whatever it was, would be activated only by the ingestion of "large amounts of alcohol."

The Government's oblique suggestion that the defendant's evidence may have been insufficient to raise the mental issue is without merit, and its failure to advance the argument directly is understandable. Since the Government offered no evidence on the issue, it would be difficult to argue in the same brief that, while the defendant's offer did not amount to *some* evidence, it proved beyond a reasonable doubt that appellant's act was not the product of mental disease. Be that as it may, the evidence here, as the trial court held, was clearly sufficient to raise the issue. The subject matter being what it is, there can be, of course, no sharp quantitative or qualitative definition of some evidence.[4] "Certainly it means more than a scintilla, yet, of course, the amount need not be so substantial as to require, if uncontroverted, a directed verdict of acquittal."[5] The judgment of the trial judge as to the sufficiency of the evidence is entitled to great weight on appeal, but, since in a criminal case the defendant need prove nothing, any real doubt should be resolved in his favor.

Once the issue is raised by *some* evidence, the Government must undertake its burden of proving beyond a reasonable doubt[6] that the defendant was not suffering from mental disease or that, if he was, then the act in question was not the product thereof.[7] There is a quibble here as to whether the psychiatrist classified Hawkins' mental condition as a disease. Whether so or not is not dispositive of the ultimate question. While the psychiatrist's diagnosis is admissible, it is not binding on the jury, for the psychiatrist's diagnosis of a condition as a mental disease is not necessarily a diagnosis of mental disease in the legal sense. Whether the defendant had a mental disease which will excuse him from criminal responsibility for his unlawful act is an issue of ultimate fact for the jury.[8] "What psychiatrists may consider a 'mental disease or defect' for clinical purposes, where their concern is treatment, may or may not be the same as mental disease or defect for the jury's purpose in determining criminal responsibility. Consequently, for that purpose the jury should be told that a mental disease or defect includes any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs behavior controls."[9] This is a legal standard to be applied by the jury[10] to all the evidence, professional and lay, bearing on the defendant's mental condition.

Psychiatrists' opinions on ultimate questions reserved for the jury may not

4. McDonald v. United States, —— U.S.App. D.C. ——, 312 F.2d 847 (No. 16,304, decided 10/8/62). Compare Tatum v. United States, 88 U.S.App.D.C. 386, 389, 190 F.2d 612, 615. See also Logan v. United States, 109 U.S.App.D.C. 104, 284 F. 2d 238; Durham v. United States, 94 U.S. App.D.C. 228, 241, 45 A.L.R.2d 1430, 214 F.2d 862, 875.

5. McDonald v. United States, supra, Note 4 (p. 849).

6. Davis v. United States, 160 U.S. 469, 488, 16 S.Ct. 353, 40 L.Ed. 449.

7. Carter v. United States, 102 U.S.App. D.C. 227, 234, 252 F.2d 608, 615; Wright v. United States, 102 U.S.App.D.C. 36,

39, 250 F.2d 4, 7; Douglas v. United States, 99 U.S.App.D.C. 232, 235, 239 F. 2d 52, 55.

8. McDonald v. United States, supra, Note 4; Carter v. United States, supra, Note 7, 102 U.S.App.D.C. at 236, 252 F.2d at 617.

9. McDonald v. United States, supra, Note 4 (p. 851).

10. "Although both psychiatrists agreed that appellant's particular condition constituted a mental disease, the existence or not of mental disease is ordinarily an issue exclusively for the jury." Campbell v. United States, 113 U.S.App.D.C. 260, 307 F.2d 597, 598.

be particularly helpful.[11] Psychiatric testimony should be directed toward explaining what the expert has observed about the dynamics of the defendant's mental condition: for example, about his symptoms, characteristics, behavior and history; and toward indicating, if the psychiatrist is in a position to do so, the effect of the observed condition on the development, adaptation and functioning of the defendant's mental or emotional processes and his behavior controls. Proper examination of the expert as to these matters will provide the jury with a basis for determining the first ultimate issue: whether the evidence shows the existence of a mental disease. Given this information, under proper instructions, the jury can not only make its own decision as to that ultimate issue but also can decide for itself whether the defendant's act was the product of the mental disease, if one be found to exist.

▮▮▮ Here the evidence of mental disease such as would meet the legal definition thereof is meager indeed. The mother's testimony that the defendant fell on his head twice, without more, does not necessarily prove anything. The tests for brain damage were all negative.[12] Dr. Rockland did say that Hawkins was "suffering from a 'low grade' mental illness, a Schizoid Character Disorder." But this is only predis-

posing to psychosis "particularly under the influence of large amounts of alcohol." And the evidence indicates that the defendant was "completely sober" at the time of his act. Even if the defendant's mental condition can be termed a mental disease under the legal test, on this evidence the jury could reasonably have decided that his alleged act was not the product thereof.[13] And it matters not that, for the most part, it was introduced by the defendant himself.[14] "A directed verdict requires not merely 'some evidence,' but proof sufficient to compel a reasonable juror to entertain a reasonable doubt concerning the accused's responsibility." [15] In this case such proof was lacking.

Appellant's second point on appeal relates to the conduct of the trial judge. Appellant argues that the trial court's cynical examination of the Government psychiatrist, subpoenaed by him, prejudiced his case by encouraging jury contempt for the psychiatrist and his opinions. Appellant argues that jurors hold the robed trial judge in great awe and reverence, that when a judge demonstrates his animosity toward and disbelief in a witness, the credibility of the witness for all practical purposes is destroyed.

▮▮▮ Jurors ordinarily resent badgering of witnesses by anyone. They

---

11. Carter v. United States, supra, Note 7, 102 U.S.App.D.C. at 236, 252 F.2d at 617: "Unexplained medical labels— schizophrenia, paranoia, psychosis, neurosis, psychopathy—are not enough. * * * The chief value of an expert's testimony in this field, as in all other fields, rests upon the material from which his opinion is fashioned and the reasoning by which he progresses from his material to his conclusion; in the explanation of the disease and its dynamics, that is, how it occurred, developed, and affected the mental and emotional processes of the defendant; it does not lie in his mere expression of conclusion."

12. Lumbo-puncture, x-rays and an electroencephalogram.

13. "The simple fact that a person has a mental disease or defect is not enough to relieve him of responsibility for a

crime. There must be a relationship between the disease and the criminal act; and the relationship must be such as to justify a reasonable inference that the act would not have been committed if the person had not been suffering from the disease. * * *

  *   *   *   *   *

"* * * The law has no separate concept of a legally acceptable ailment which *per se* excuses the sufferer from criminal liability. * * *" Carter v. United States, supra, Note 7, 102 U.S.App.D.C. at 234–236, 252 F.2d at 615–617.

14. Ladrey v. United States, 81 U.S.App. D.C. 127, 130, 155 F.2d 417, 420. Compare Davis v. United States, supra, Note 6, 160 U.S. at 493, 16 S.Ct. at 360.

15. McDonald v. United States, supra, Note 4 (p. 6, slip opinion).

realize that many witnesses, like themselves, are completely disinterested and that their participation in the trial, like their own, is not volitional on their part. Nevertheless, courts, most of all, should be respectful of, indeed protective of, the rights and dignity of witnesses. Disregard of such rights remains a fruitful source of prejudice to the defendant in a criminal case. Whether the trial court's examination of the Government psychiatrist was so improper as to constitute reversible error is a close question. Without characterizing it further, we simply say that, in the circumstances of this case, it may be deemed harmless error.

Affirmed.