David O. Boehm, J.
The defendants Morris and Norton Abronovitz have been charged by the Monroe 'County Grand Jury (Indictment No. 25 filed Jan. 24, 1969) with 54 counts of obscenity in violation of section 235.05 of the New York State Penal Law.
The facts leading to this indictment are as follows: On two separate days in January, 1969, persons connected with the Rochester Police Department and the Monroe County District Attorney’s office purchased magazines from the book store of the defendants and known as Earl’s Book Store at 81 Main Street West, Rochester, New York. The titles of the magazines were as follows: “ Josephine ”, “Park Ave. Girls”, “Peak”, “ Wink ”, “ Lovey Dovey ”, “Fancy Pants” and “Foxy Lady ’ ’.
On January 7, 1969, and alleging a violation of section 235.05 of the Penal Law, these purchases as well as a description of their contents, were recited in an application for a search warrant made to City Court Judge Edward O. Provenzaho. The individual magazines were produced on the application for the scrutiny of the Magistrate. In the application, both the magazines produced, as well as other magazines alleged to have been observed on the premises, were described as depicting scenes disclosing the nude male and female exposing the male and female genital organs, the public area and breasts.
Based on this application, the Magistrate issued a search warrant ex parte directing the search of the defendants’ book store and the seizure of magazines and photographs “ depicting-scenes of nude persons, both male and female, depicting and exposing the genital organs.”
Following issuance of the search warrant, the Rochester Police Department, in possession of arrest warrants based on the earlier sales, executed the same, arrested the defendants and confiscated approximately 1,023 magazines and calendars. Approximately 260 were identical or closely similar to the magazines described in the application and made available to the Magistrate as hereinbefore mentioned. The majority of the other magazines confiscated approximated those shown to the Magistrate in that they, too, display the male and female genital areas. Their dissimilarity, if any, is in the lesser degree *1071 in which these areas of the human anatomy are focused upon and exposed.
The defendants by their motion to controvert the grounds upon which the search warrant was issued, raise the following points:
1. The 'City Court Magistrate was without authority to issue the search warrant without a prior adversary hearing on the issue of obscenity.
2. The search made by the police was under the authority of a general warrant not sufficiently describing the items to be seized in contravention of the Fourth Amendment to the United States Constitution in that it left too much to the discretion of the police concerning what was to be confiscated as obscene.
3. The search warrant was issued without probable cause in that what was described as obscene in the application for the warrant was constitutionally protected.
The defendants move to dismiss the indictment on the further grounds that (1) the items buttressing each count of the indictment are not obscene and hence within the protection of the First Amendment; and (2) that section 235.05 of the New York State Penal Law is unconstitutional in that it provides a less permissive standard for obscenity than made and defined in People v. Richmond County News (9 N Y 2d 578) in interpreting former section 1141 of the Penal Law as proscribing only “ hard core pornography ”.
NECESSITY OE A PRIOR ADVERSARY HEARING
The defendants rely on A Quantity of Books v. Kansas (378 U. S. 205) and Marcus v. Search Warrant (367 U. S. 717) as authority for their position that a prior adversary hearing was required before the search warrant in the instant case could be issued. In an informative discussion of Rage Books v. Leary (301 F. Supp. 546), the requirement of a prior adversary hearing has been recently discussed in the New York Law Journal. (N. Y. L. J., July 18, 1969, p. 1, cols. 4 and 5.) In Rage Boohs the constitutionality of section 792 of the Code of 'Criminal Procedure as it applied to obscenity was at issue. Upholding the authority of an ex parte seizure, the court distinguished Kansas and Marcus from the purpose and rationale of section 792 of the Code of Criminal Procedure, authorizing searches upon an ex parte application. In Kansas and Marcus, the constitutionality of the State’s civil statute authorizing the massive seizure of material for purposes of suppression was involved.
*1072 The aim and purpose of section 792 of the Code of Criminal Procedure is to aid the District Attorney, whose primary duty it is to enforce the State’s penal statute proscribing sale of obscenity, a crime under section 235.05 of the Penal Law.
“ The seizures in this case were of instrumentalities and evidence of the crime * * * We do not believe Marcus and Quantity of Boohs [dealing with suppression] can be read to proscribe the application of the ordinary methods of initiating criminal prosecution to obscenity cases.” (United States v. Wild, 422 F. 2d 34, 38.)
Conceding that Rage Books and United States v. Wild (supra) limit an ex parte search and seizure to material necessary for prosecution of the substantive crime, the fact remains that in the instant case the defendants are charged with possession with intent to promote obscene material and that the prosecution must in fact rely upon evidence of a quantity of similar material as indicative of such intent. Having this in mind, the seizure in the instant case cannot be deemed a massive seizure as proscribed in Kansas and Marcus.
As further authority for the court’s position that the Kansas and Marcus decisions are inapposite to a criminal prosecution, the court is cognizant of the failure of this State’s appellate courts to discuss the necessity of a prior judicial hearing in decisions dealing with search and seizure of evidence essential in obscenity prosecutions when, in this court’s view, such an issue would be a threshold consideration. (People v. Rothenberg, 20 N Y 2d 35 and People v. Hughes, 31 A D 2d 235.)
THE SEARCH AS INCIDENTAL TO DEPENDANTS’ ARREST
It appears from the argument of the District Attorney, which was not controverted by the able counsel for the defendants, that the police of this city were armed with warrants for the arrest of the defendants at the time of the search in question and that these warrants were based upon the complaint of the officer to whom the magazines “ Josephine ”, “Park Ave. Girls ”, “ Peak ” and “ Wink” were sold on January 3 and 6, 1969. This being a fact, then the search and seizure can be justified on the additional ground that it was incidental to a lawful arrest. (See People v. Matherson, 16 N Y 2d 509.) The defendants’ argument that an incidental search cannot be justified in obscenity cases is not well founded. Such a contention was answered by Judge Pollack in Rage Books when he stated: “ It cannot be the law, free speech rights notwithstanding, that peddlers and purveyors of smut and despicable vul *1073 garity have a constitutional license to publicly exploit pictures, magazines and books plainly exhibiting gross depravity, with complete immunity from on-the-spot arrest of the merchant and seizure of a reasonable quantity of the evidence on which to prosecute the arrest.” (Rage Books v. Leary, 301 F. Supp. 546, 549.)
The defendants ’ argument is that an arrest with a warrant is even suspect in obscenity cases and seeks to distinguish People v. Matherson (supra), from the instant case on the grounds that Matherson was an on-the-spot arrest. Arrests with warrants charging earlier crimes have been justified because of the necessity for prior judicial scrutiny of the facts alleged as a basis for the warrant. (See Milky Way Prods. v. Leary, 305 F. Supp. 288.)
With regard to the relevant argument that the incidental search in the instant case was wider in scope than now permitted under the authority of Chimel v. California (395 U. S. 752) it is sufficient to note that Chimel has only prospective application. (United States v. Bennett, 415 F. 2d 1113.)
THE SEARCH WARRANT AS A GENERAL WARRANT
The defendants’ second contention concerns itself with the language used by the issuing Magistrate in describing the items to be seized in the instant case. The search warrant directed and authorized the seizure of 11 magazine and photographs depicting scenes of nude persons * * * disclosing the exposing the female and male genital organs, the female and male public areas, including the male penis and female breasts.” The warrant did not authorize the seizure of “ obscene material ” as was the case in Rothenberg and Hughes (supra). By the clear language of the warrant, the police were not authorized to seize photographs of mere nudes disclosing portions of the anatomy unless they included the genital areas. In this regard, the police had no discretion. The Magistrate made the judicial determination of what was obscene, not the police.
While it must be conceded that in obscenity cases the issuing Magistrate must be mindful of the First Amendment’s limitations on the Fourth Amendment’s requirement for specificity and therefore he must use language sufficiently descriptive to protect constitutionally permissible items, there is no additonal requirement that the language used be ultimately proven correct when tested by the Both criteria. (Roth v. United States, 354 U. S. 476.) The cases are numerous which point out that a determination of obscenity is a very difficult one for even the *1074 courts to make. (See People v. Rothenberg, 20 N Y 2d 35, supra, and Jacobellis v. Ohio, 378 U. S. 184, 187; Elison, “ Obscenity: A Compromise Proposal ”, 30 Montana L. Rev. 123.) Neither Rothenberg nor Hughes even imply this requirement. It is enough that a Magistrate exercising his judicial duty be placed between the police and the defendant and' make the determination. This is a sufficient and adequate constitutional safeguard.
PROBABLE CAUSE FOR ISSUANCE OF THE WARRANT
The defendants next argue that the search warrant was issued without probable cause in that neither the application nor the sample of magazines shown to the Magistrate demonstrated obscenity as a matter of law. This court must meet the question of what is obscene and hence outside the protection of the First Amendment. The answer to this question is necessarily dis-positive of the defendants’ substantive motion to dismiss the indictment.
At the threshold of this question is the proposition that the First Amendment affords no protection to the expression of obscenity. (Roth v. United States, 354 U. S. 476, 495, 502.) What is obscene is concededly a difficult question. (People v. Rothenberg, supra.) The decisions by our highest courts do indicate palpable lines between obscenity and protected expression. The difficulty in delineating the obscene is nevertheless said to be a continuing one and the attempt to draw the line should not be abandoned. The allusion in People v. Bercowitz (61 Misc 2d 974) to Justice Holmes’ statement that “ all legal questions are questions of degree * * * a series of points tending to fix a point in a line ” is appropriate here as well.
In determining the question of obscenity, we must begin with the statutory definition of obscenity as contained in subdivision 1 of section 235.00 of the Penal Law (eff. Sept. 1, 1967 and superseding former § 1141).
subdivision 1. “ obscene ” “ Any material or performance is ‘ obscene ’if (a) considered as a whole, its predominant appeal is to prurient, shameful or morbid interest in nudity, sex, excretion, sadism or masochism, and (b) it. goes substantially beyond customary limits of candor in describing or representing such matters, and (c) it is utterly without redeeming social values.”
This definition is parallel to the Federal test or definition as enunciated in Roth v. United States (supra) and Memoirs v. Massachusetts (383 U. S. 413, 418); (McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, Part 2, Practice Commentary, p. 89). Our present statutory definition of obscenity was intended to be *1075 less stringent and includes a wider class of conduct than the “ hard core pornography ” test of People v. Richmond County News (9 N Y 2d 578) (McKinney’s Practice Commentary, supra). All three elements of the statutory definition as under the Federal test must coalesce. (Memoirs v. Massachusetts, supra, and Mishkin v. New York, 383 U. S. 502.) In determining obscenity in a close case, evidence of pandering or foisting the material upon an unwilling public as found in Ginzburg v. United States (383 U. S. 463) is considered relevant. (Milky Way Prods. v. Leary, 305 F. Supp. 288, supra.)
In the instant case there is no claim of a sale to a minor (People v. Tannenbaum, 18 N Y 2d 268) nor any suggestion of an assault upon individual privacy in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to the claimed obscenity and no evidence of pandering which in Ginzburg the court found significant.
Thus the sole question to be determined by the court is whether the material upon which the indictment and the search warrant were based is constitutionally permitted under the First Amendment or whether the material can be said to fall within the statutory and Roth definition of obscenity.
Since this question is a question of law, it is to be determined by the court (Jacobellis v. Ohio, 378 U. S. 184, 188, supra). Therefore, the motion to dismiss the indictment and to controvert the warrant for lack of probable cause is properly before the court. (People v. Stabile, 58 Misc 2d 905.)
We need not concern ourselves with the question of whether the material has any redeeming social value. Counsel for defendants concedes that it has none. This court must decide whether the dominant theme of the material in the publications taken as a whole appeals to the average person’s prurient interest in sex and whether the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters.
The New York statute may not be interpreted as proscribing a wider class of material than proscribed by the Federal test. (Mishkin v. New York, 383 U. S. 502, supra.)
Applying the Federal test to our present New York statutory definition, we may conclude that “ hard core pornography ” would meet the Federal test. (Redrup v. New York, 386 U. S. 767.) We may also conclude that the court is not restricted to a finding of ‘ ‘ hard core pornography ’ ’ before material can be said to be obscene. (Redrup v. New York, supra; McKinney’s Penal Law, Practice Commentary, supra.)
*1076 Under the ‘ ‘ hard core pornography ’ ’ test, acts of normal or perverted sexual activity is required. (Mr. Justice Stewart’s dissent in Jacobellis v. Ohio, supra.) Since the “hard core pornography” test is more permissive than the Both test, it would logically follow that consummated acts of sexual activity is not essential to the Roth test but that a graphic suggestion of erotic sexual conduct would suffice. (People v. Bercowitz, 61 Misc 2d 974, supra; City of Youngstown v. De Loreto, 19 Ohio App. 2d 267; People v. G. I. Distrs., 20 N Y 2d 104, 107, dissent, Fuld, J.)
In the instant case much of the material concerns itself with the graphic depiction of the female vagina exposed to such an extent that the vulva is clearly visible. It is not the female vagina itself which is obscene, but the manner in which it is posed that offers the insult “ to sex and to the human spirit ” (D. H. Lawrence, Selected Literary Criticism, Viking Press, p. 37), and is patently offensive because of its affront to contemporary community standards. It is the same type of thing found to be obscene in People v. Clark (60 Misc 2d 1073) which involved a plastic replica of an erect male organ and in magazines with photographs portraying, as in many of the magazines at bar, the feminine sex organ in various positions and attitudes. (United States v. 77 Cartons of Magazines, 300 F. Supp. 851; Youngstown v. De Loreto, supra.)
Most of the magazines here consist entirely of photographs of nude men or women. Some have a few pages of text material. Taken as a whole, all of them unequivocally suggest sexual activity by the emphasis the photographs place upon a single, specific, relationship, hetero or homosexual, between the viewer and the photographed subject. What resonates throughout all of them is not only the explicitness with which the sexual organs are shown in a sordid, voyeuristic atmosphere, but also the deliberately contrived invitation to the viewer to participate. The genitalia are exposed and emphasized in such a way as to totally depersonalize the human model into an object or thing ‘ ‘ mainly designed to make possible an endless, nonculminating kind of ultimately affectless activity.” (Sontag, Styles of Radical Will, Farrar, Straus and Giroux, p. 52.)
To say that ‘ ‘ this spectacularly cramped form of the human imagination ” (id., p. 70) is protected by the First Amendment is to overlook the obvious, i.e., that the United States Supreme Court has never interdicted enactments against obscenity, provided they do not “ transgress the boundaries fixed by the Constitution for freedom of expression.” (Winters v. New York, 333 U. S. 507, 515; see, also, Prince v. Massachusetts, 321 U. S. *1077 158; Roth v. United States, 354 U. S. 476; Ginzburg v. United States, 383 U. S. 463; Kingsley Books v. Brown, 354 U. S. 436.)
The court is aware of the recent reversal by the Supreme Court of People v. Carlos (24 N Y 2d 865, revd. 396 U. S. 119). However, an examination of the exhibits in Carlos, copies of which were furnished by defense counsel, convincingly discloses that they nowhere approach the sexual explicitness depicted in the material upon which the instant indictment is predicated and are therefore clearly distinguishable.
CONSTITUTIONALITY OF SECTION 235.05
The New York Legislature is not bound to limit penal proscriptions to “ hard core pornography ” as defined in People v. Richmond County News (9 N Y 2d 578, supra). The Federal Constitution nowhere commands any such State judicial supremacy. The States are free, in whatever manner they choose, to give wider freedom for expression than the First and Fourteenth Amendments require. (Mishkin v. New York, supra, and Milky Way Prods. v. Leary, supra; see, also, Kingsley Books v. Brown, supra, p. 441.) The statute is clearly constitutional.
Particularly, the counts in the indictment which describe the titles of the material which this court has examined and found satisfying the Both criteria, are counts First, Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, Eighteenth, Nineteenth, Twentieth, Twenty-first, Twenty-second, Twenty-third, Twenty-fifth, Twenty-sixth, Twenty-eighth, Twenty-ninth, Thirtieth, Thirty-first, Thirty-second, Thirty-third, Thirty-fourth, Thirty-fifth, Thirty-sixth, Thirty-seventh, Thirty-eighth, Thirty-ninth, Fortieth, Forty-first, Forty-second, Forty-third, Forty-fourth, Forty-fifth, Forty-sixth, Forty-seventh, Forty-eighth, Forty-ninth, Fiftieth, Fifty-first, Fifty-second, Fifty-third, Fifty-fourth.
The court finds the warrant to be valid, as well as the search and seizure pursuant to it and to the warrants of arrest. Accordingly, except as to the material seized pursuant to counts Fifth, Twenty-fourth and Twenty-seventh of the indictment, all of the magazines may be retained by the People for use as exhibits. As to these, the court further finds that they are not constitutionally protected as a matter of law.
The motion to dismiss counts Fifth, Twenty-fourth and Twenty-seventh of the indictment is granted, and the exhibits referred to therein are ordered returned. In all other respects, the motions are denied.