James Jay **KAPLAN**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 5452.

District of Columbia Court of Appeals.

Argued April 6, 1971.

Decided May 10, 1971.

---

William H. Schweitzer, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and Roger E. Zuckerman, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and KERN and GALLAGHER, Associate Judges.

KERN, Associate Judge.

Appellant appeals from a judgment of conviction for presenting an obscene film [1] entered after a trial by the court without a jury. Prior to trial, the court upon an affidavit by a police officer had issued a search warrant for a film of some 12 minutes running time contained in a "peepshow" machine located in an "arcade" in downtown Washington. On the day after the warrant was executed and the machine and its reel seized, the court offered to hold a hearing on the validity of the issuance of the warrant, but appellant declined the offer.

At trial, the Government presented evidence consisting of the reel seized and the testimony by a police officer that appellant was working on the premises both on the day of the seizure and on a prior day when the officer had viewed the film there and that appellant had half-ownership of the arcade in which the machine in question as well as a number of others were located. The trial court found the film to be obscene per se and that there was no reason to reopen the question of the validity of the seizure of the peep show reel.

H. Clifford Allder, Washington, D. C., for appellant.

Appellant complains that the trial court failed (a) to apply prevailing national com-

1. D.C.Code § 22–2001 (Supp. III, 1970) provides in pertinent part:
   (a) (1) It shall be unlawful in the District of Columbia for a person knowingly—
   \* \* \* \* \*
   (B) to present, direct, act in, or otherwise participate in the preparation or presentation of, any obscene, indecent, or filthy play, dance, motion picture, or other performance;

\* \* \* \* \*
   (2) (B) For purposes of paragraph (1) of this subsection, the term "knowingly" means having general knowledge of, or reason to know, or a belief or ground for belief which warrants further inspection or inquiry of, the character and content of any article, thing, device, performance, or representation described in paragraph (1) of this subsection which is reasonably susceptible of examination.

munity standards before finding the film obscene and (b) to hold an adversary hearing prior to issuing the search warrant. He also contends that there was failure of proof that he knew the film being exhibited in this particular machine was obscene.

■ As to his contention of lack of *scienter*, there was evidence that appellant was working at the arcade on more than one occasion when the film was being displayed and had an ownership interest in the arcade. Such evidence is sufficient under the statute to show knowledge on his part. Morris v. United States, D.C.App., 259 A. 2d 337, 340 (1969).

■ As to the Government's alleged failure to introduce at trial evidence of prevailing community standards, this court in Morris v. United States, *supra* at 341, adopted the Maryland definition of obscenity per se and we held there that:

[W]here obscenity per se is involved, the prosecution is not required to offer any evidence (beyond the material or performance itself) * * * that it is below the national community standards. *Womack, supra; Hudson* [Hudson v. United States, D.C.App., 234 A.2d 903], *supra.* In other words if reasonable men could not differ and they could come to but one conclusion, *i. e.*, that the material or performance is sexually morbid, grossly perverse, and bizarre, without any artistic or scientific purpose or justification, then the Government on its case-in-

chief need not offer any evidence of national community standards.

In this case, we have viewed the film,[2] and it is beyond question sexually morbid, grossly perverse and bizarre, and wholly without any artistic or scientific justification. The description of the film, contained in the memorandum opinion of the trial judge, which we attach hereto as an Appendix, is accurate, if somewhat understated. Its finding that the reel was obscene per se must be upheld under Morris v. United States, *supra*, and Womack v. United States, 111 U.S.App.D.C. 8, 294 F.2d 204 (1961).

■ We emphasize that the defendant in an obscenity prosecution, when the prosecution's theory is that the material is obscene per se, has the right always to introduce evidence to the trier of fact of prevailing community standards to prove that the material is not obscene per se. *See* Morris v. United States, *supra.* Appellant did not do so in this case.

■ Finally, we consider appellant's contention that he should have been granted a hearing prior to the issuance of the warrant directed to the peep show machine.[3] We note that the warrant was issued upon a detailed affidavit,[4] that only one machine out of a number was seized and that the machine contained a single 12-minute peep show reel. Moreover, a hearing on the propriety of the seizure was offered appellant the day after the seizure.

2. We are required to make "an independent constitutional judgment on the facts * * * as to whether the material involved is constitutionally protected." Jacobellis v. Ohio, 378 U.S. 184, 190, 84 S.Ct. 1676, 1679, 12 L.Ed.2d 793 (1964).

3. An adversary hearing before issuance of a search warrant is not required by the fourth amendment but when such search would curtail "constitutionally protected expression." *See* Quantity of Copies of Books v. Kansas, 378 U.S. 205, 210–211, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964).

4. The affidavit stated in part that:
   This movie is of a white female with long brown hair, about 25 yrs. of age. During this movie this female fondles her breast's [sic] with her hands, Licks her breast's [sic] with her tongue, Places a banana in her mouth and simulates oral copulation, and moves her body in a manner suggesting an invitation to sexual intercourse. It is submitted that the movie being exhibited in this panoram machine # 20 at 514 9th St. N.W. is of an obscene, indecent, and filthy nature, and in violation of Title 22, D.C.Code, Section 2001 as amended by Section 606, Public Law 90–226.

Unlike books, magazines and theatre films there is a real and practical difficulty in viewing a peep show machine reel before seizing it. Law enforcement officials have no right to require the operator to bring the machine to the court and the court has no reason to go to the machine. We think the procedure followed under the particular circumstances of this case was reasonable. *See* United States v. Wild, 422 F.2d 34, 40 (2d Cir. 1970); United States v. Pryba, 312 F.Supp. 466, 469 (D.D.C.1970); Bazzell v. Gibbens, 306 F.Supp. 1057, 1059–1060 (E.D.La.1969); Rage Books, Inc. v. Leary, 301 F.Supp. 546, 551 (S.D.N.Y. 1969); People v. DeRenzy, 275 Cal.App.2d 380, 79 Cal.Rptr. 777 (1969) (holding that state law enforcement officers, acting under authority of a search warrant, may seize at least one copy of an alleged obscene book, film or other material when necessary for use in a later adversary proceeding, without doing violence to the first or fourth amendments). *But cf.* Demich, Inc. v. Ferdon, 426 F.2d 643 (9th Cir. 1970) (affirming District Court's order that the film seized in DeRenzy be returned), vacated and remanded, 401 U.S. 990, 91 S.Ct. 1223, 28 L.Ed.2d 528 (1971), for reconsideration in light of Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971).

Affirmed.

## APPENDIX

This film depicts a young female stripping absolutely naked, then brazenly and shamelessly displaying her breasts as well as her genitalia including the mons veneris. The sceneric background is meager and is designed in such a fashion as not to distract nor to interfere with the viewer's concentrated attention focused upon the camera's long shots, close-up shots and very-close-up shots of the female participant's genitalia and astronomically large breasts. The female filmed simulates passion; and by her body movements, gyrations and undulations coupled with a banana, used as a phallic symbol and being larger than normally displayed for sale in the neighborhood food markets, suggests to the viewer that she is masturbating orally copulating (i. e., fellatio) and seems most willing to engage in sex play culminating with sexual intercourse. The apparent highlight of this film footage is a close-in view of the female performer's vaginal area and with the aid of a banana used as a replica of the male sex organ in an erect state, she suggests to the viewer rather graphically the act of sexual intercourse. The film concludes with the woman peeling and devouring the banana—the gist of which is intended to be illustrative of the performer's desire to participate in osculatory relations with the private parts of a male.