489 P.2d 823

**NGC THEATRE CORPORATION,**
Appellant,

v.

John **MUMMERT,** Sheriff of Maricopa County; and Maricopa County Sheriff's Office, Appellees.

No. 10341.

Supreme Court of Arizona,
In Banc.

Oct. 20, 1971.

Rehearing Denied Nov. 16, 1971.

Brown & Finn, by Michael J. Brown, Tucson, Stanley Fleishman, Hollywood, Cal., for appellant.

Moise Berger, Maricopa County Atty., by Robert L. Storrs, Deputy County Atty., Phoenix, for appellees.

CAMERON, Justice.

This is an appeal from an order of the trial court holding that the film "I Am Curious (Yellow)" is obscene under the Arizona statutes § 13–531.01 and § 13–535 A.R.S. and granting a permanent injunction prohibiting the appellant, National General Corporation, from exhibiting the film within the State of Arizona.

We are called upon to decide:

1. Does the definition of obscenity as set forth in the Arizona statutes violate the due process requirements of notice?

2. Does the statute cover motion pictures?

3. Is this film protected by the First Amendment?

4. Is "I Am Curious (Yellow)" obscene under the Arizona statutes?

The film was exhibited for a period of approximately five weeks at the Vista Theater in Phoenix, Arizona. Thereupon it was seized pursuant to a search warrant and without prior adversary hearing. In a collateral action such procedure was set aside. Lee Art Theatre v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968). After petition and hearing on the petition, a full adversary hearing was set for 28 November 1969. After the hearing and after two viewings of the film by the trial juge, the judge found the film to be obscene, ruled that continued exhibition thereof constituted a public nuisance, granted a permanent injunction against exhibition thereof, and ordered the film impounded.

## DEFINITION

Appellant first contends that the definition of obscenity in the Arizona statute is not consistent with the due process clause of the United States Constitution and the United States Supreme Court decisions decided thereunder. The statute in effect at the time of the prior adversary hearing was an almost literal reproduction of the ALI, Model Penal Code, § 207.10(2) (Tent. Draft No. 6, 1957), and read as follows:

"2. 'Obscene' means that which considered as a whole has as its dominant theme or purpose an appeal to prurient interest or a shameful or morbid interest in nudity, sex or lewdness going substantially beyond customary limits of candor in description or representation of such matters." § 13–531.01, subsec. 2 A.R.S.

The United States Supreme Court has stated:

"This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. * * * [A]ll that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * *'." Roth v. United States, 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498, 1510–1511 (1957).

We have examined the definition and find it sufficient that an "ordinary person can intelligently choose in advance what course is lawful for him to pursue." We agree with the statement of the Arizona Court of Appeals:

"We believe, therefore, that our statutory definition of 'obscene,' applied according to the standards enunciated by the U. S. Supreme Court for judging obscenity, gives adequate warning of the proscribed conduct and affords sufficient guidelines for fair administration of the anti-obscenity statute." Barbone v. Superior Court of Pima County, 11 Ariz.App. 152, 156, 462 P.2d 845, 849 (1969).

## MOTION PICTURES

§ 13–535 A.R.S., wherein relevant, reads as follows:

"A. The superior court has jurisdiction to enjoin the sale or distribution of obscene prints and articles, as described in subsection B.

"B. The county attorney of any county or the city attorney of any city in which a person * * * or corporation publishes, sells, or distributes * * * any book, magazine, pamphlet, comic book, story paper, writing, paper, picture, drawing, photograph, figure, image or any written or printed matter of an indecent character, which is obscene * * * or in any other respect defined in § 13–531.01, may maintain an action on behalf of such county or city for an in-

junction *  *  * in the superior court to prevent the sale *  *  * or the distribution *  *  * of the acquisition, publication or possession *  *  * of any. *  *  * picture, drawing, photographed figure or image or any written or printed matter of an indecent character, described in this subsection *or in § 13-531.01.*" (Emphasis added.)

Appellant would have us apply the *expressio unius est exclusio alterius* doctrine and exclude motion pictures from such treatment. We decline to do so. Exhibit reference is had to § 13-531.01. That section defines an obscene "item" as follows:

· "*  *. * any book, leaflet, pamphlet, magazine, booklet, picture, drawing, photograph, film, negative, slide, *motion picture*, figure, object, article, novelty device, recording, transcription or other similar items." (Emphasis added.)

█ We hold that the statute, § 13-535 A.R.S., embraces obscene motion pictures.

## DOES THE FIRST AMENDMENT PROTECTION APPLY?

The protection offered by the First Amendment of the United States Constitution to citizens in obscenity cases, has been poorly delineated, if indeed it has been delineated at all. We agree with Mr. Justice Harlan (in dissent) that, "no stable approach to the obscenity problem has yet been devised by this Court." A Book Named "John Cleland's Memoirs of a Woman of Pleasure" (Fanny Hill) v. Attorney General of Com. of Mass., 383 U.S. 413, 455, 86 S.Ct. 975, 996, 16 L.Ed.2d 1, 26 (1966).

"We need a definition of 'obscenity' to know what publications, if any, in this general class are subject to punishment. First-class minds have devoted first-class efforts to this definition for many years, and we must get used to their want of success. Obscenity may be defined either at some high level of abstraction or in functional terms, but this is a social problem which is not ever going to be reducible to some simple formula of the $A = \pi r^2$ variety. Not only is obscenity incapable of a mathematically precise definition; it is also incapable of definition with the precision of many a good, usable legal formula. A definition of burglary as breaking and entering in the nighttime for the purpose of committing a felony has a flatly tangible quality to it. There is going to be no equivalent in the law of obscenity." John P. Frank, Obscenity: Some Problems of Values and the Use of Experts, 41 Washington Law Review 631, 633 (1966).

However indistinct the guidepost set by the United States Supreme Court may be, we must, nevertheless, attempt to determine whether the trial court was correct when it denied the protection of the First Amendment to the facts (and the film) in the instant case.

Motion pictures are forms of expression within the meaning of the First Amendment to the United States Constitution. Burstyn v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). The standard to be used in determining whether the film is obscene is a federal constitutional standard under the United States Constitution:

" *  *  * The legal test for obscenity established by Federal case law is whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to the prurient interest. Jacobellis v. Ohio [378] U.S. 184, 84 S. Ct. 1676, 12 L.Ed.2d 793. We specifically say 'Federal case law' because the phrase 'contemporary community standards' refers to the entire nation and not the geographic boundaries of any state or subdivision thereof. To limit 'contemporary community standards' to the standards of an area less than the entire nation would conflict with the First Amendment. Jacobellis v. Ohio, supra." State v. Locks, 97 Ariz. 148, 151, 397 P. 2d 949, 951 (1964).

█ It is the standard that the United States Supreme Court under the United States Constitution has determined to be the national "contemporary community

standard" that must be applied by the states in determining whether to extend the protection of the First Amendment to a particular case. Indeed, the United States Supreme Court is the only court that can practically (and authoritatively) say what the national standard is to be. We are not then concerned with standards of other states or an average of the standards of other communities.

■ The application of this federal constitutional (national) standard is a matter of law for the court:

"Where the keeping for sale and exhibiting of obscene or indecent writings or pictures is the charge before the court, it is incumbent upon the court to determine whether the material is obscene as a matter of law. Unless the material is obscene as a matter of law, the dissemination thereof is protected by the First Amendment to the Constitution of the United States. * * *" State v. Locks, supra at 97 Ariz. 151, 397 P.2d at 951.

The trial court, then, must, as a matter of law and using the national standards as set down by the United States Supreme Court, determine if the defendant or the material in a particular case is protected by the First Amendment. This is usually done in the "prior adversary hearing" as required by the United States Supreme Court. Lee Art Theatre v. Virginia, supra; Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). We believe that the procedure followed in this case, wherein a "prior adversary hearing" was held, was correct. Even though the Arizona statutes do not require this proceeding, the United States Supreme Court cases most certainly do. Lee Art Theatre v. Virginia, supra; Freedman v. Maryland, supra; City of Phoenix v. Fine, 4 Ariz.App. 303, 420 P.2d 26 (1966).

The next question concerns the guidelines to be followed by the court in making this determination. We believe that under the decisions of the United States Supreme Court, the trial judge, when determining as a matter of law whether to apply the First Amendment protection in an obscenity action, is faced with four categories of cases. The first two categories are concerned primarily with the manner in which the material is handled by the defendant. The last two categories are concerned primarily with the nature of the material. In all categories we assume that the material is potentially, if not actually, obscene in its patently offensive appeal to prurient interest in sex.

■ First is the situation wherein, by the manner in which the material is used, the defendant is protected by the First Amendment. The materials may be so-called "hard core pornography," but because of the use to which the defendant is putting them the First Amendment applies. Possession of obscene material and pornography for viewing or reading within one's home is, for example, protected by the First Amendment, see Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), as would be a showing and distribution for bona fide scientific or educational use.

■ The second category includes material which, though it may not be patently offensive or obscene, because of the actions of the seller or the defendant it is without First Amendment protection and its sale, distribution, showing or publication may be prohibited. An example of this category is Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966), wherein the material itself was not on its face obscene, but because of the pandering and the appeal to the viewer's prurient interest the defendant was denied First Amendment protection. It may well be that the sale or showing to minors will fall in this category. See Butler v. Michigan, 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412 (1957). It is the actions and intent of the defendant and not the material per se that makes him liable for his misconduct:

"* * * Where the purveyor's sole emphasis is on the sexually provocative aspects of his publications, that fact may be decisive in the determination of obsceni-

ty. ·Certainly in a prosecution which, as here, does not necessarily imply suppression of the materials involved, the fact that they originate or are used as a subject of pandering is relevant to the application of the Roth test.

\*   \*   \*   \*   \*   \*

"The Government does not seriously contest the claim that the book has worth in such a controlled, or even neutral, environment. Petitioners, however, did not sell the book to such a limited audience, or focus their claims for it on its supposed therapeutic or educational value; rather, they deliberately emphasized the sexually provocative aspects of the work, in order to catch the salaciously disposed." Ginzburg v. United States, supra at 383 U.S. 471–472, 86 S.Ct. at 947–948.

**■** Thirdly we have the type of case that gives us the most trouble and the greatest number of cases. These are the "redeeming social value" cases.

"We defined obscenity in Roth in the following terms: '[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.' (citations omitted) Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest ·in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the matter is utterly without redeeming social value." A Book, etc. v. Attorney General of Com. of Mass., supra at 383 U.S. 413, 418, 86 S. Ct. 975, 977 (1966).

This category does not include the so-called "hard core pornography," but does include material which by its nature standing isolated and alone would be considered obscene but is redeemable by the fact that it is not so patently offensive that the work

taken as a whole does not have some modicum of social value or literary merit.

**■** It must be borne in mind that the test is "utterly without redeeming social value," and not "utterly without social value." The social value must be such as to redeem the whole work, and in the case of very offensive hard core works, this is. usually an insurmountable task.

**■** There is, then, a class that social values cannot redeem. This is the fourth category; this is the so-called "hard core pornography" which is obscene on its face and is not protected by the First Amendment. See Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966). We find it objectionable and illogical to hold, as the appellant suggests, that hard core pornography can be made publishable by interspacing it with items of alleged redeeming social value. We do not believe that the "redeeming social value test" can draw this type of material out of the cesspool of obscenity, to the protection of the First Amendment. See People v. Abronovitz, 62 Misc.2d 1069, 310 N.Y.S.2d 698 (1970); Miller v. Reddin, 293 F.Supp. 216 (C.D.Cal.1968); City·of Youngstown v. DeLoreto, 19 Ohio App.2d 267, 251 N.E.2d 491 (1969). These are the cases in which the court can say that "there [can] be no doubt that the film is obscene." Dunn v. Maryland State Board of Censors, 240 Md. 249, 255, 213 A.2d 751, 754 (1965); John P. Frank, 41 Washington Law Review, supra.

The best definition of hard core pornography that we have read is as follows:

"It [hard core pornography] focuses predominantly· upon what is sexually morbid, grossly perverse and bizarre, without any artistic or scientific purpose or justification. Recognizable 'by the insult it offers, invariably, to sex, and to the human spirit' \* \* \* it is to be differentiated from the bawdy and the ribald. Depicting dirt for dirt's sake,. the obscene is the vile, rather than the· coarse, the blow to sense, not merely to· sensibility. It smacks, at times, of fan-

tasy and unreality, of sexual perversion and sickness and represents * * * 'a debauchery of the sexual faculty'." Judge Fuld in People v. Richmond County News, 9 N.Y.2d 578, 587, 216 N.Y.S.2d 369, 376, 175 N.E.2d 681, 686 (1961); William B. Lockhart and Robert C. McClure, Obscenity Censorship: The Core *Constitutional Issue—What is Obscene?*, 7 Utah Law Review 289; William B. Lockhart and Robert C. McClure, Censorship of Obscenity: The Developing Constitutional Standards, 45 Minnesota L.Rev. 5, 63–64; Ginzburg v. United States, supra at 383 U.S. 499, n. 3 (Stewart, J., dissenting).

The trial court in its order stated that "the Brennan 'social value' doctrine in *Fanny Hill* is not a rule of law binding upon this court to the extent that I must consider it as a third independent test of obscenity without weighing it against the doctrine set forth in *Roth* [,] being the prurient interest and patent offensiveness tests."

█ We have no difficulty in placing the film "I Am Curious (Yellow)" in the fourth category and holding that the trial court did not commit error in failing to consider the social value doctrine as a separate independent test in determining that the film was not protected by the First Amendment.

## IS "I AM CURIOUS (YELLOW)" OBSCENE?

█ Having cleared the hurdle of the federal constitutional standards, we now reach the issue of obscenity vel non under the Arizona statute. "I Am Curious (Yellow)" is admittedly tame by many current standards. We candidly make this assertion notwithstanding its literal and explicit depictions of rape, fellatio, cunnilingus, suggested sodomy and various other lewd and lascivious acts. Whether this speaks highly of current general standards of acceptability, however, is not of concern to this court. We need only test the film against the definition of obscenity in the Arizona statute, § 13–531.01, subsec. 2 A.R.S., and we find that the trial court did not commit error as a trier of fact in determining that the film was obscene. Once the court, as a matter of law, has determined that the First Amendment protection does not apply, the trier of fact then may decide whether the material in question is obscene according to local standards and state law.

The dominant theme of this film taken as a whole, upon the application of contemporary standards, appeals to a prurient interest in sex. It goes beyond the customary limits of description and representation of sexual matters in Arizona and is utterly without redeeming social importance. § 13–531.01, subsec. 2 A.R.S. We hold that the trial judge was correct in finding that it violated the Arizona statute defining obscenity.

## PROCEDURE

█ The procedure followed by the trial court in holding the prior adversary hearing for purposes of determining if the protection of the First Amendment was to be applied to the case and also in determining whether the film was obscene under our statutes at the same hearing is not the procedure to be followed where there may be a jury involved, as in a violation of our criminal obscenity statutes. In that situation, after the prior adversary hearing out of the presence of the jury, the jury as trier of fact must still determine whether the material violates the state's obscenity statute. Where, however, the matter is tried before the court without a jury, as here, the court may decide both issues in a single hearing.

Judgment affirmed.

STRUCKMEYER, C. J., HAYS, V. C. J., and UDALL and LOCKWOOD, JJ., concur.