Friedrich Peter HERMANN, Appellant,

v.

UNITED STATES, Appellee.

No. 6374.

District of Columbia Court of Appeals.

Argued July 18, 1972.

Decided April 23, 1973.

---

Stanley M. Dietz, Washington, D. C., for appellant.

Warren S. Grimes, Atty., Dept. of Justice, of the bar of the State of California, pro hac vice, by special leave of court, with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, Lester B. Seidel, and James F. McMullin, Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING, GALLAGHER and NEBEKER, Associate Judges.

GALLAGHER, Associate Judge:

After a nonjury trial, appellant was convicted of exhibiting an obscene motion picture in violation of D.C.Code 1972 Supp., § 22–2001. Appellant contends that there must be a reversal because, among other things, there was no evidence that the film exceeded community standards and the court found there was no community standard, national or otherwise.

After the arresting officer testified, the film involved was introduced into evidence and viewed by the court, after which the government rested its case. Appellant's motion for judgment of acquittal was denied on the ground that the court found the movie to be "hard-core pornography" [1]

---

1. This is still another in a line of degrading, revolting movies depicting, among other things, multi-couple sexual acts of every description.

and concluded the government had carried its burden of proof "thus far."

An expert witness then testified for appellant [2] to the effect that, in his opinion, the film did not violate contemporary national community standards. The government offered no rebuttal testimony that the film violated national community standards, stating:

> The Government has anticipated expert witnesses in this case. We are very frank—in our anticipation of what they will say—we are not prepared to rebut them and have a battle of experts because that will not solve anything for the Court either, your Honor. It would be no easier for the Court to decide on the basis of conflicting experts than it would on the basis of the Court's own ability and—expert witness.

■ Finding that the film was hard-core pornography, and was shown knowingly, the court entered a judgment of guilty. In so doing, the court stated, "I agree with virtually everything the [expert witness] said." The court further stated, "[I]f I had not found this to be hard-core obscenity, I would have had to find Mr. Hermann not guilty because there is no question in my mind that there [are] no national standards nor are there any community standards." [3]

■ It is apparent that the procedure in this case does not meet the requirements clearly laid down by this court in Parks v. United States, D.C.App., 294 A.2d 858 (1972). There we held that where the court rules at the end of the government's case that the material is obscene per se and

the defendant introduces evidence that it does not exceed community standards, the trial court's "finding of obscenity per se evaporates, much as a rebuttable presumption does, and the burden of proceeding shifts back to the Government to prove beyond a reasonable doubt a violation of contemporary national community standards." *Parks, supra,* at 860.

■ Obscenity per se, by definition, relieves the government from offering *any* evidence of community standards to make a prima facie case. [4] *Parks,* however, requires reversal in this case because the government, in the face of evidence presented by the defense, offered no rebuttal evidence regarding community standards. It is going far, as it is, to permit the government, in a criminal case, to forego proof of a required element of an offense due to the gravity of the government's evidence. Three elements must be proved before material or a performance can be found obscene: it must (a) appeal to a prurient interest in sex, (b) be utterly without redeeming social value, and (c) violate contemporary national community standards. Memoirs v. Attorney General of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966); Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L. Ed.2d 793 (1964); Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

Since this is a criminal prosecution in the First Amendment area and because of the constitutional requirement that each element be proved beyond a reasonable doubt, and considering that the government is being given the benefit of a shortcut in

---

2. Appellant also testified in his own behalf but his testimony is not material to our disposition of the case.

3. This conflicts with Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964), among other decisions, where the Supreme Court defined the term community standards as meaning national community standards; and, consequently, it is incorrect to conclude there are no

national standards as the Supreme Court has made this a matter of proof at trial.

4. Parks v. United States, D.C.App., 294 A.2d 858 (1972); Wilhoit v. United States, D.C.App., 279 A.2d 505 (1971); Kaplan v. United States, D.C.App., 277 A.2d 477 (1971), petition for cert. filed, 40 USLW 3109 (U.S. Sept. 21, 1971) (No. 71–40); Morris v. United States, D.C.App., 259 A.2d 337 (1969).

proof (as to "community standards"), when a defendant introduces evidence on "national community standards" the burden shifts back to the government and it must offer rebuttal evidence on this score or suffer an acquittal.

*Parks* does not actually create a presumption, let alone one on the footing of the sanity presumption to which the concurring opinion adverts. Such presumptions as those are based upon the probabilities of human experience. *See generally* AALS, Selected Writings on the Law of Evidence and Trial 1010–1067 (1957). But the reaction of any given trial judge to whether a particular photograph or film is obscene per se is not of this derivation. A judgment on this might vary from judge to judge depending upon their backgrounds and outlooks.

This is why, like it or not, there is sometimes a need for expert testimony. More than a decade ago, the late Justice Frankfurter pointed out that the interpretation of contemporary community standards

> . . . [o]ught not to depend solely on the necessarily limited, hit-or-miss, subjective view of what they are believed to be by the individual juror or judge. It bears repetition that the determination of obscenity is for juror or judge not on the basis of his personal upbringing or restricted reflection or particular experience of life, but on the basis of "contemporary community standards." Can it be doubted that there is a great difference in what is to be deemed obscene in 1959 compared with what was deemed obscene in 1859? [Smith v. California, 361 U.S. 147, 165–166, 80 S.Ct. 215, 225, 4 L.Ed.2d 205 (1959), (Frankfurter, J., concurring).]

The thrust of his opinion was that defendants have a right to introduce expert testimony. Here, however, we are only concerned that sufficient evidence is adduced to establish obscenity. But despite a different focus, the primary consideration is the same.

> There is no external measuring rod for obscenity. Neither, on the other hand, is its ascertainment a merely subjective reflection of the taste or moral outlook of individual jurors or individual judges. [Smith v. California, *supra*, at 165, 80 S.Ct. at 225.]

A recent decision by the United States Court of Appeals for the First Circuit, United States v. Palladino, 475 F.2d 65 (1973), went further and held expert testimony to be constitutionally required in obscenity cases. This decision recognized that expert testimony will not cure the difficulties of determining whether certain material is obscene. Nevertheless, concluded the court, neither it nor juries could adequately assess allegedly obscene material without the aid of expert testimony. *Palladino, supra,* at 72–74.

■ Although we think that expert testimony would often substantially assist trial court determinations regarding obscenity as well as our own independent review on appeal, we do not require expert testimony as a matter of course to establish the *Roth-Memoirs* elements in every obscenity case. *See* Smith v. California, *supra,* 361 U.S. at 172, 80 S.Ct. 215 (Harlan, J., concurring). But while we understand the lack of appetite for a "battle of experts," that choice in many cases may be preferable to the choice with which the concurring opinion presents us. *See* United States v. Palladino, *supra,* at 75.

■ Finally, although this decision is controlled by *Parks,* the recently adopted doctrine of obscenity per se may well bear further examination in the future before it becomes entrenched.[5] As matters stand,

---

5. The Supreme Court has heard argument and has for decision seven obscenity cases, in eight more cases certiorari has been granted but argument is pending, and in more than fifty cases certiorari is still pending. It is reasonable to expect a major decision from the Supreme Court resolving some of the uncertainties in this area before the Court's term ends a few months from now.

the doctrine expressly relieves the government of its burden to introduce any evidence beyond the material (or film) itself to show that it violates national community standards unless the defense introduces such evidence. Furthermore, as a practical matter, little or no evidence need be introduced to establish the other two elements of obscenity under the *Roth-Memoirs* test, *supra*. It is difficult to visualize how such a perfunctory showing can establish each element of the offense beyond a reasonable doubt (In re Winship, 397 U.S. 358, 90 S. Ct. 1068, 25 L.Ed.2d 368 (1970)), much less establish that the material falls outside the protection of the First Amendment.

Reversed and remanded for a new trial.[6]

NEBEKER, Associate Judge (concurring):

As in Parks v. United States, D.C.App., 294 A.2d 858 (1972), the trial judge here "refused to consider" (*id.* at 860) the defense evidence on national standards—that is, "the trial judge erroneously ruled that the 'door [was not] open for [appellants] to rely upon [the experts'] testimony.'" *Id.* This is clear from his statement quoted in the opinion of the court. Accordingly, I concur in this holding.

*Parks*, however, cannot be read as requiring the prosecution to come forward with contrary expert testimony on national standards every time the defense introduces expert testimony on that subject. Since the trial judge in *Parks* refused to consider defense testimony in the first instance, and that was his error of law, any comments by the *Parks* panel on the evidentiary burden of the prosecution to withstand a motion for judgment of acquittal was a purely gratuitous observation and not a statement of case law. It is nonetheless entirely probable that the Bar and the trial court might construe such extended

remarks to be a holding in *Parks*. To that extent, such a view of *Parks* will surely permit a trial of this type to degenerate into a battle of "experts." The issue simply is not presented for decision here and was not presented in *Parks*. *Cf*. In re Niblack, 476 F.2d 930 (D.C.Cir., 1973).

In discussing the "evaporation" approach in *Parks* and in comparing it to a rebuttable presumption, this court has not ruled that in all such obscenity cases the prosecution must come forward with contrary expert testimony. *Cf*. Greene v. United States, 114 U.S.App.D.C. 266, 267 n. 1, 314 F.2d 271, 272 n. 1 (1963), where the presumption of sanity survives introduction of evidence of nonresponsibility and may be considered by the jury in deliberation. That presumption alone is enough to carry the burden of proving responsibility in the face of the defense of insanity if the fact finder is so persuaded. Greene v. United States, *supra*; Hawkins v. United States, 114 U.S.App.D.C. 44, 310 F.2d 849 (1962); McDonald v. United States, 114 U.S.App. D.C. 120, 312 F.2d 847 (1962) (en banc). Indeed, as with the presumption of sanity, the nature of the "presumed" obscene material is subject to acceptance or rejection by the fact finder (judge or jury) on the question of guilt based on "human experience" about which the opinion of the court speaks, *supra*. There is nothing in the *Parks* holding, despite some discussion of the metaphysics of proof burden, which would require the prosecution, under penalty of a directed judgment of acquittal, to use contrary expert testimony on national standards. With defense evidence on national standards the question of guilt becomes factual, not legal under the obscenity per se ruling. *See* Heinecke v. United States, 111 U.S.App.D.C. 98, 294 F.2d 727 (1961). In light of well-established law that a fact finder is free to reject any "expert's" qualifications or the verity of his opinions, *e. g.*, Burke v. Washington Hospital Center, 475 F.2d 364 (D.C.Cir.,

---

6. The government is entitled to a new trial since the judgment here was entered prior to our decision in Parks v. United States, *supra*.

1973),[1] *Parks* cannot be read as mandating production of government expert testimony on the evidentiary issue of contemporary standards. In determining the issue of obscenity, the fact finder may reject the defense evidence on contemporary standards. In so doing the fact finder may consider along with the experiences in the affairs of life[2] the material or exhibition without other proof on the element of contemporary standards. Thus, the prosecution could, if it chose, proceed to verdict on the basis of the nature of the subject matter of the case. Of course, ultimate constitutional protection of that subject matter always resides with the appellate court and in most instances with the United States Supreme Court. I agree with the hope expressed in footnote 5 of the court's opinion that the Supreme Court will resolve the procedural and substantive uncertainties in the obscenity area. Despite the conceded importance of the First Amendment it would seem that too much judicial resource is expended in these types of cases where expression of ideas gives way to attempted sexual stimulation, a biological phenomenon hardly worthy of this kind of constitutional protection.

I must confess some misgivings at the notion that anyone can in all candor profess expertise in such national community standards. What may be shown in this type of movie house in the District of Columbia or across the nation is hardly as reflective of "standards" as it is of capacity for some community toleration.[3] This record reveals a film depicting in ultimate detail every imaginable kind of multicouple sexual act. With such, it hardly serves the interests of the community or the First Amendment purposes to limit trial determination of obscenity to a choice between self-professed experts willing to judge the extent of the nation's conscience. I submit that neither *Parks* nor this holding can or should go so far. Indeed, this film is so clearly obscene that it falls squarely within Womack v. United States, 111 U.S.App.D. C. 8, 294 F.2d 204 (1961).

The photographs which are exhibits in this case are conclusive autoptical proof of obscenity and filth.

\*   \*   \*   \*   \*   \*

In the case at bar the photographs were filthy, self-evidently and indisputably. We think that photographs can be so obscene—it is conceivably possible that they be so obscene—that the fact is incontrovertible. These photographs are such. [*Id.* at 9–10, 294 F.2d at 205–206.]

We should remember that dependence on expert witnesses on questions of fact so closely tied to the ultimate fact issue amounts to a dangerous abdication of the responsibility of the courts to adjudicate. As to the insanity defense, Chief Judge Bazelon has colorfully and accurately described this abdication to experts as giving them a "stranglehold on the process." United States v. Brawner, 471 F.2d 969, 1011 (D.C.Cir. 1972) (Bazelon, C. J., separate opinion).

1. *See* Junior Bar Section, The Bar Association of the District of Columbia, Criminal Jury Instructions for the District of Columbia, Instruction 16, Expert Testimony (1966).

2. *Id.*, Instruction 2, Function of the Jury. Indeed, an instruction to that effect was given in Heinecke v. United States, *supra*, an obscenity case. See Joint Appendix to the Record at 242.

3. An excellent discussion of community-standards law as it applies to obscenity findings on national and local levels, as well as a fine analysis of obscenity law in general, can be found in Justice Cameron's opinion for the Supreme Court of Arizona in NGC Theatre Corp. v. Mummert, 107 Ariz. 484, 489 P.2d 823 (1971).