OPINION OF THE COURT
Max H. Galfunt, J.
The three defendants were arrested and charged with violation of section 235.05 of the Penal Law (obscenity in the second degree), which is a class A misdemeanor.
The complaint alleged that the defendants acting in concert with each other in a bar in Queens County did promote an obscene performance in that the defendants Colleen Tommer and Rita Siermala did dance topless and bottomless in an obscene manner and that the defendants did expose and manipulate inner parts of their vaginas. It was further alleged that the defendant Peter Ventrice, manager of the premises, did allow and permit the other defendants to act in an obscene manner in the premises.
On April 4, 1978, a hearing was held after which a date was set for trial.
On the 16th day of May, the defendants appeared for trial and waived a jury trial.
Defense counsel stipulated with the Assistant District Attorney that the facts as adduced at the hearing shall be deemed the evidence and testimony on the trial. Both parties agreed that the facts and the law should be determined by this court.
The defendants contend that even if the facts are as set forth at the trial, the defendants are not guilty of the violation of section 235.05 of the Penal Law as a matter of law.
There is no dispute as to the facts, which were stipulated to as follows:
The arresting officer testified that on March 14, 1978 at 10:45 p.m. he was at a cocktail lounge at 19-48 37th Street in Queens County. He saw defendant Colleen Tommer dance on stage, remove her G-string, and expose the inner part of her vagina.
The second dancer, Rita Siermala, relieved her on stage and performed the same act, i.e., removed her clothes and her G-string and also exposed the inner part of her vagina.
*284 The defendant, Peter Ventrice, gave the females quarters (coins) to put in the jukebox and was observed walking around the bar and going into the kitchen.
The court finds that the above-stated facts were proven beyond a reasonable doubt.
The defendants are charged with violation of subdivision 2 of section 235.05 of the Penal Law which states, "A person is guilty of obscenity in the second degree when, knowing its content and character, he * * * Produces, presents or directs an obscene performance or participates in a portion thereof which is obscene or which contributes to its obscenity.”
With respect to the defendant, Peter Ventrice, there is no evidence that he was involved in the dance, or that he produced, presented or directed an obscene performance, or that he otherwise participated or contributed to an obscene performance.
However, where the two female defendants are involved, we have evidence, which is not in dispute or contradicted, as to their performances. The only question, insofar as they are concerned, is — were their performances obscene?
The New York State statute defining the term obscene, section 235.00 of the Penal Law, was amended in 1974 in order to conform substantially with the Supreme Court decision in Miller v California (413 US 15).
The basic guidelines set forth by the court for determining if certain material is obscene entail:
(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest;
(b) whether the work depicts or describes in a patently offensive way, sexual conduct specificially defined by the applicable State law, i.e., ultimate sexual acts, normal or perverted, actual or simulated, or masturbation, excretory functions, and lewd exhibition of the genitals (emphasis added); and
(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. (Miller v California, supra, pp 24-25.)
Obscenity is in "the eyes of the beholder”. The beholder is bound by contemporary community standards. (Penal Law, § 235.00, subd 1.)
The principal area of concern to both libertarians and conservatives was the interpretation of the phrase "contempo *285 rary community standards”. As stated in Miller v California (supra, pp 31-34): "Nothing in the First Amendment requires that a jury must consider hypothetical and unascertainable 'national standards’ when attempting to determine whether certain materials are obscene as a matter of fact * * * We hold that the requirement that the jury evaluate the materials with reference to 'contemporary standards of the State of California’ serves this protective purpose and is constitutionally adequate.”
The primary concern, as clarified in Mishkin v New York (383 US 502, 508), with requiring a jury to apply the standard of the average person applying contemporary community standards is to be certain that, so far as material is not aimed at a deviant group, it will be judged by its impact on an average person, rather than a particularly susceptible or sensitive person — indeed a totally insensitive one. (Miller v California, 413 US 15, 33, supra.)
In People v Heller (33 NY2d 314, 323) the New York Court of Appeals declared that in determining whether any material is patently offensive or obscene, the community standard to be applied is a State standard as opposed to the utilizing of either a national or a local standard. The court stated (pp 322-323) that, "This State standard [of California] was specifically approved in the Miller opinion * * * and, when taken together [with the assumption that if] the State law complies with the new test constitutional rights are adequately protected by the safeguards of appellate review * * * it becomes clear that the obscenity statute in any given State will be applied with uniformity Statewide through the construction given it by the appellate courts.”
The law now is well settled that obscenity is dependent on contemporary State-wide community standards. (People v Nitke, 45 AD2d 543, 546; People v Hausman, 82 Misc 2d 1032, 1034.)
The determination of obscenity involves not simply a question of fact, but a mixed question of fact and constitutional law.
Proof of obscenity is difficult. Although the Supreme Court, in Miller v California (supra), sought to delineate a specific standard, obscenity still remains an illusive and ill-defined concept.
Matter of Excelsior Pictures Corp. v Regents of Univ. of State of N. Y. (3 NY2d 237, 242) stated that, "[Under New *286 York law,] [n]udity in itself and without lewdness or dirtiness is not obscenity in law or common sense * * * For more than a century the New York courts have held that exposure of the body to the view of others is not criminal if there be no lewd intent”.
Since lewdness cannot be presumed from the mere fact of nudity, there must be a showing of lewd conduct from which the intention to act in a lewd manner can be drawn. (People v Hardy, 77 Misc 2d 1092.)
In People v Gilbert (72 Misc 2d 75), a prosecution for public lewdness (intentionally exposing the private or intimate parts of the body in a lewd manner or committing any other lewd act) was found not to lie when a female defendant removed her clothing and remained nude on a public beach for one and one-half hours. The court concluded (p 77) that her activities during that time (i.e., the slow application of suntan lotion to the frontal portion of her body including her breasts and down to her pubic hair and sunbathing on a blanket with arms behind propping her up, legs outstretched with knees about 12 to 18 inches apart) could not by any interpretation of the law establish the element of lewdness beyond a reasonable doubt.
This court is well aware of the fact that in various sections of Riis Park, a beach and park area in this State in the vicinity of New York City, numerous males and females sunbathe in the nude in such a manner that the gentials of both sexes must, at times, be exposed in varying degrees.
In People v Abronovitz (62 Misc 2d 1069, affd in part, revd in part on other grounds 38 AD2d 681, revd on other grounds 31 NY2d 160), the court found that certain magazines consisting entirely of photographs of nude men and women were obscene. Much of the material dealt with the graphic depiction of the female vagina exposing it to such a degree that the vulva was clearly visible. The court stated (p 1076) that "It is not the female vagina itself which is obscene, but the manner in which it is posed that offers the insult 'to sex and to the human spirit’ ”.
The genitalia were explicitly exposed in a sordid voyeuristic atmosphere in such a way as to totally depersonalize the human model. All of the photographs unequivocally suggested sexual activity and conduct and deliberately contrived invitations to the viewer to participate. In the instant case, there was neither an indication that the defendants approached the *287 sexual explicitness depicted in the photographs nor any suggestions of sexual activity.
Where genitalia have been graphically portrayed, together with some indication of sexual activity, e.g., sexual intercourse, masturbation or sodomy, absent social justification or excuse, the material in question has been held obscene. However, the graphic representation of genitalia, without more, is not a violation of the obscenity statute. Where there is merely nudity or exposure of the genitals absent any accompanying lewdness or a lewd act, there is no obscenity and the freedom of expression is protected. (People v Clark, 60 Misc 2d 1073, 1074.)
In People v Bercowitz (61 Misc 2d 974), the court noted that while it is difficult to delineate between obscenity and protected expression, such lines can and must be drawn. The court’s basis for finding the play "Che” obscene and, therefore, not protected by the Fourteenth Amendment, was the fact that the many nude actors and actresses were involved in the close simulation of numerous sexual acts and sexual activity. It is this graphic depiction or simulation of sexual conduct that establishes the line beyond which lies obscenity.
Topless dancing has achieved a certain level of protection under the First Amendment, but it, as indeed any other protected activity, may be automatically divested of such protection upon a showing that it is obscene. (Roth v United States, 354 US 476.) This position was reaffirmed in Miller v California (413 US 15, 36, supra), which held that obscene material is not protected by the First Amendment.
In People v Conrad (70 Misc 2d 408) the defendant was prosecuted under the public lewdness statute, section 245.00 of the Penal Law. That case was similar in nature to the instant case in that a liquor licensed establishment was the premises where a dance or series of dances was performed to taped music by a defendant who appeared topless at times and was said to have had the pubic area of her body covered except for a couple of brief moments. Again, there was sufficient evidence of strong suggestions of sexual intercourse and other sexual acts for the court to declare that this particular case should have been the subject of an obscenity prosecution, rather than the theory chosen. The obvious legislative intent of section 245.00 was to proscribe indecent exposure of a public nature or like or similar public-type acts in that such acts could be said to have been commited in either a public *288 place or a private place under circumstances where the perpetrator could be readily observed elsewhere. The purpose is to protect the unsuspecting or unwilling type of viewer from being the target of such acts.
Those who are viscerally affected by such entertainment, basing their objections on the ground that it represents an attack on the moral structure of the community, will no doubt disagree with the various decisions that hold nude performances are merely a harmless form of diversion best left to individual choice.
Nevertheless, courts have made it clear that our law does not consider distaste or moral indignation as a violation of the obscenity statute.
A balance must be struck in deciding under the relevant guidelines set down whether a particular performance is obscene based upon the facts which are presented to the court. While decided under section 235.00 of the Penal Law prior to the 1974 amendment but in conjunction with the guidelines from Miller v California (413 US 15, supra), the court in Commissioner of Dept of Bldgs, of City of N. Y. v Sidne Enterprises (90 Misc 2d 386) found that the activities of four nude women in gyrating and thrusting their genitals at the faces of onlooking men in apparent return for gratuities constituted patently offensive sexual conduct, i.e., a lewd exhibition of the genitals, based upon the community standards of New York or even Sodom and Gomorrah. Again, this description of actions goes far beyond anthing described by the arresting officer in the case before this court.
The other side of the coin was presented by the Second Circuit which brought topless dancing within the purview of the First Amendment through its possession of a modicum of expression and a conceptual similarity between partially nude dancing in a bar and nude dancing in the legitimate theater. Judge Oakes writing for a unanimous court indicated that, "in substance” topless dancing might not differ from a nude ballet performed at Lincoln Center — since topless dancing is merely a form of dancing, albeit a distasteful one to some, it is entitled to the First Amendment protection afforded the performing arts. (Salem Inn v Frank, 522 F2d 1045, 1049, affg 381 F Supp 859.)
Acknowleging that this case falls somewhere in between the extremes presented by the Sidne situation and a nude ballet, this court has determined upon the facts and upon the law *289 that the conduct attributed to the defendants does not reach such a level of patent offensiveness under contemporary State community standards so as to require a holding that it is obscene.
This court finds that the defendants have not been found guilty of obscenity in the second degree beyond a reasonable doubt under section 235.05 of the Penal Law.